Argued February 20, decided March 5, 1912.

## STATE v. PERKINS.

[121 Pac. 797.]

INTOXICATING LIQUORS—LOCAL OPTION—CONSTITUTIONAL PROVISIONS.
The Constitution of Oregon, Article XI, Section 2, as amended in
1910 (L. O. L. p. xxv), giving cities exclusive control of prohibition
and the regulation of the sale of intoxicating liquors, is self-executing
and creates cities as the greater unit, with their wards or precincts, if
existing, the lesser units, and repeals so much of the local option
law as permits voters outside of a city in a county to have a voice
in determining the status of the city as to the sale of liquors and a
city in a county may hold a local option election under the statutory
machinery on the subject.

From Lane: LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE MCBRIDE.

Defendant, Edwin G. Perkins, was convicted of the crime of selling intoxicating liquors without license, and, having been sentenced to pay a fine of $50 and costs, appeals.

The facts were stipulated and are substantially as follows: At the general election held in June, 1908, the whole of Lane County became prohibition territory, and there has been no change in its status until the present time. The town of Springfield is a municipal corporation with a charter authorizing it to license and regulate the sale of intoxicating liquors. For the purposes of general elections it is divided into two precincts, both extending beyond the limits of the municipality, and for the purposes of its municipal election it has only one ward or precinct which is coextensive with its municipal boundaries. On October 2, 1911, a petition was duly filed with the county clerk of Lane County, demanding an election under the local option law for the town of Springfield, and thereafter the county court made an order calling such election to be held on November 7, 1911; that being the date of the regular city election. The sheriff posted five notices of such election in the city, and the recorder

also posted a like number. The election resulted in a majority of 30 votes against prohibition, and the county court duly made an order that the sale of intoxicating liquors should be permitted in Springfield. A license was issued to defendant. Pursuant thereto he began the business of retailing liquors and his arrest and conviction followed.       REVERSED.

For appellant there was a brief over the names of *Messrs. Coovert & Stapleton, Mr. Frank A. DePue,* and *Mr. John A. Carson,* with oral arguments by *Mr. DePue* and *Mr. Elmer E. Coovert.*

For the State there was a brief with oral arguments by *Mr. Edwin R. Bryson,* District Attorney, and *Mr. John M. Williams.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

MR. JUSTICE BURNETT dissenting.

The sole question here is whether or not the town of Springfield had authority to hold a local option election under Section 2, Article XI, of the Constitution of Oregon, as amended in 1910, (L. O. L. p. xv), commonly known as the "Home Rule" amendment, while county prohibition was in force as a whole, where the two county election precincts in which Springfield was situated included outside territory and electors.

In *State* v. *Schluer,* 59 Or. 18 (115 Pac. 1057), and *State* v. *Hearn,* 61 Or. ...... (115 Pac. 1066: 117 Pac. 412), we discussed generally the effect of the Home Rule amendment on the local option law, and it may be taken as settled that the effect of such amendment was to divorce all municipalities from the counties of which they form a part, and to create separate entities or units for the purpose of putting into effect the local option law. Before the amendment the county was the largest unit, and the election precinct or city ward was the smallest.

The whole of an incorporated city was also made one of the units or subdivisions within which a local option election could be held. That portion of Section 4920, L. O. L., which designates the various units or subdivisions in which elections may be held, reads as follows:

"Such subdivision of a county, or a precinct of a county, may embrace in its limits incorporated towns and cities and portions thereof, or may consist of the whole or a portion of an incorporated city or town."

Other portions of the same section provide that contiguous precincts may consolidate, but that no part of a precinct less than the whole shall be included in any subdivision.

We have then at least four subdivisions within which a vote might be taken: (1) The whole county; (2) any precinct in the county or consolidation of precincts; (3) any ward in a city; and (4) the city itself. That it was the intent of the law to permit a city as a separate entity or any ward in the city to act as a separate entity or subdivision is indicated by Section 4922, L. O. L., in which occurs the following language:

"If under the provisions of this act, an election shall be demanded wholly or in part in any incorporated city or town or any ward or precinct therein, to be held at the time of the city or town election occuring in a year in which there is no general election, then the county clerk shall notify the proper authority of such city or town that such election has been demanded in order that such city or town authority may cause the official ballots to be prepared," etc.

· These provisions of the law were in existence when the Home Rule amendment was adopted and furnish ample machinery by which any city or town may vote at its regular city election upon the question of local option. The intention of the amendment was to give cities exclusive control of the liquor traffic and to make cities, as to their minor wards and precincts, the greater unit.

Previously the county had been the greater unit. The effect of the amendment was to repeal so much and no more of the local option law as permitted voters outside the municipality to have a voice in determining its status as to the sale of liquor, but to reserve to the various wards and precincts of the city the same rights that were previously possessed by county precincts. In the city of Springfield there was only one municipal ward or voting place when this vote was taken, though others have been created and will be in operation at future elections. Counsel for the State have suggested that, if the city is permitted to create the precincts or wards in which the local option elections are held, there is danger that they may do so in such a manner that the residence districts will not have the right to protect themselves or perhaps will only create one ward or precinct. But the answer to this is that the county authorities might, if they saw fit, so gerrymander the city in laying out precincts as to accomplish a like result.

In the case at bar we have an instance of a prohibition county with an anti-prohibition town; but in Marion County, for instance, we have an anti-prohibition county with at least two municipalities—Woodburn and Stayton —strongly prohibition. It does not seem to the writer of this opinion that it was the intent of the Home Rule amendment to make its effect depend upon the will of the county court, so that one town may have whiskey forced upon it and another prohibition, until the court sees fit to arrange county precincts so as to include only city territory. It is true that in *State* v. *Schluer* there is a suggestion of possible difficulty where the election precincts lie partly without and partly within the city; but the remark was a mere suggestion, not necessarily involved in the decision of the case, which arose under conditions where no election whatever had been held; the

council assuming to pass a license by ordinance without submitting the question of prohibition to a vote. The difficulty suggested in that opinion would be one of procedure only, as it was probably anticipated that in precincts of that character where the vote was taken at a general election, and voters within and without the municipality voted promiscuously at the same polling place, using the same ballot box, it would be difficult to determine who had voted or who was entitled to vote on the question of prohibition within the limits of the city. Here no such difficulty arises. The election was a city election purely. The city had its own election machinery and its own election precinct, and there was no reason on earth why, if it is entitled to control the liquor question within its limits as the constitution says it may do, it should require the county court to furnish further machinery to accomplish the same end.

The contention of counsel is not so much that the constitutional amendment requires additional legislation to put it into execution, as that the county court of Lane County must give its consent before Springfield can take advantage of the permission given to towns and cities to regulate the license and sale of liquors. To recapitulate, we are of the opinion that the Home Rule amendment is self-executing; that the municipality as a whole stands as the greater unit, and the various wards or precincts, if more than one exists, are the lesser units, just as the election precincts are the lesser units in the county at large; that the procedure preliminary to submitting the liquor question to a vote should be by petition to the county court and order of that body, and should follow in general the local option law; that the notices for the election should be posted by the sheriff and return made as therein provided. This will give the effect to the amendment which the people contemplated when it was

adopted, and all these things were done in the case at bar.

The judgment of the circuit court will be reversed, and the cause remanded, with directions to discharge the defendant.                                             REVERSED.

MR. JUSTICE BURNETT dissented from the above opinion for the following reason:

For the reasons set forth in the concurring opinion in *State* v. *Schluer,* 59 Or. 18 (115 Pac. 1057), I dissent from the conclusion reached by Mr. Justice MCBRIDE in the foregoing opinion.