Argued January 13, decided February 3, 1914.

## WILEY *v.* REASONER.

(138 Pac. 250.)

**Intoxicating Liquors—Local Option—Petition for Election—Qualifications of Petitioners.**

1. Where a registration law under which the election officers acted was declared void by the Supreme Court three weeks after the election, the qualifications of petitioners for a local option election who registered under that law cannot thereafter be questioned under Section 4920, L. O. L., authorizing a local option election on petition of 10 per cent of the registered voters, without proof that the petitioners were not legal voters.

  [As to power of legislature to define qualifications of voters, see note in 7 Ann. Cas. 665.]

**Intoxicating Liquors—Effect of Invalidity—Registration of Voters.**

2. That voters were registered under a law on which the County Court, county clerk, and election officers acted, but which was by the

Supreme Court declared void after the election, and did not file the affidavit blank A prescribed by Section 3449, L. O. L., for use by voters who have failed to register, does not invalidate the election; the qualifications of the voters under the Constitution not being questioned.

[As to validity of statute providing for registration of voters, see note in Ann. Cas. 1913B, 17. As to power of state to require and prescribe mode of proof of registration, see note in 28 Am. St. Rep. 260.]

**Intoxicating Liquors—Local Option—Notice of Election.**

3. A city included parts of two precincts for county purposes, but constituted a single precinct for city purposes. The County Court had not made the city a precinct nor divided it into precincts, as authorized by Section 3304, L. O. L., notwithstanding the home rule amendment to the Constitution (Article XI, Section 2), vesting in each city or town the exclusive right to license, regulate, or control the sale of liquors, subject to the local option law. The first notices of a local option election provided for only one voting place. Later notices, posted only 5 days before the election, while the statute required at least 12 days' notice, provided for two polling places, and the election was held in accordance with the latter notices. *Held,* that the election will not be set aside in the absence of proof that some qualified electors were deprived of the right to vote.

**Intoxicating Liquors—Local Option—Time for Election.**

4. Section 4922, L. O. L., provides that local option elections shall be held only on the first Tuesday after the first Monday of November in any year, at the regular voting places, by the judges and clerks appointed under the general election laws, or, if at the time of a city election, then by the city judges and clerks; and, if an election shall be demanded to be held at the time of a city or town election in a year when there is no general election, the city or town shall cause the official ballots to be prepared, and a city officer shall return the vote to the county clerk. *Held,* that a local option election may be held in a year when no general election is held, on the first Tuesday after the first Monday in November, though no city election is held on that date, the latter part of the section merely authorizing the use of city machinery in the election when it falls on the same date as the city election, when no general election is being held.

From Washington: JAMES U. CAMPBELL, Judge.

In Banc.    Statement by MR. JUSTICE EAKIN.

This is a suit by D. B. Reasoner, county judge, John Nyberg, county commissioner, and C. A. Hanley, county commissioner, said defendants constituting the County Court of Washington County, Oregon, to obtain a decree declaring the local option election held in the city of Hillsboro on November 4, 1913, illegal and void, and to vacate the order of the County Court, made November 17, 1913, declaring prohibition in said city.

The plaintiff was a liquor dealer therein. The said city of Hillsboro, together with contiguous territory without the city, for county purposes is composed of two precincts; for city purposes, it constitutes but one voting ward. On October 1, 1913, petitions containing a large number of signatures were filed with the county clerk and presented to the County Court, praying for a local option election in the city of Hillsboro on November 4, 1913. On the —— day of October, 1913, based on said petitions, the County Court ordered that an election be held in said city on said date to determine whether the sale of intoxicating liquors should be prohibited therein, and directed that the notice of election be given. Said election was held on said date, and resulted in 23 majority votes for prohibition. On the 17th day of November, 1913, the County Court, pursuant to the canvass of the votes of said election within said city, entered an order declaring the vote to be in favor of prohibition and prohibiting the sale of intoxicating liquors therein. Upon the trial of this suit, the court denied the application of the plaintiff, and decreed that the order of prohibition was valid. The plaintiff appeals.

AFFIRMED: REHEARING DENIED.

For appellant there was a brief, with oral arguments by *Messrs. Bagley & Hare* and *Mr. John A. Carson.*

For respondent there was a brief over the names of *Mr. Edwin B. Tongue* and *Mr Thomas H. Tongue,* with an oral argument by *Mr. Edwin B. Tongue.*

MR. JUSTICE EAKIN delivered the opinion of the court.

The following contentions are made by plaintiff: (1) That the signers on petitions for a local option election were not registered voters; (2) that the order of the County Court calling the election was invalid; (3)

proper notices of the election were not given; (4) that the election was not held upon the day appointed by law; and (5) that the votes of 506 persons who were not registered were cast and received.

1. The petition before the County Court asking that an election be held to determine whether the sale of intoxicating liquors in the municipality of Hillsboro shall be prohibited alleges that the petitioners are legal voters of the municipality of Hillsboro. His place of residence within Hillsboro is given opposite the signature of each petitioner. The clerk certifies that 143 of the petitioners were registered voters, which were more than the number required. Of course, the clerk's certificate was made from the registration of 1913 under the registration law of that year, which this court thereafter, on November 25, 1913, held to be unconstitutional; but the election was held on November 4th, prior to the decision, and it was too late for the plaintiff to question the qualifications of the petitioners after the election had taken place, at least without proof that the petitioners were not legal voters within the city. The registration law was held void only because the taking effect of it was made to depend on the approval of the Supreme Court. The registration taken thereunder actually disclosed that those registered were legal voters when certified by the clerk; and the election and vote taken thereat should not be held void and a community disfranchised by reason of a defect in the law that would not affect the right of the petitioners to sign the petition. In the designation of who may petition for a local option election in Section 4920, L. O. L., namely, "registered voters," the word "registered" may be considered as surplusage under the circumstances found here. Had the petitioners been registered only under the 1899 registration law, the petitions would not have been received or acted on by the County Court; and, if it was not suffi-

cient that they were registered under the 1913 law, then Section 4920 contains an impossible requirement as to registration when there was no means of compliance available to the petitioners, and the petitions, if signed by voters qualified as to such under the requirements of the Constitution, constituted a substantial compliance with the statute. The court will not hold the petitions insufficient for that defect without proof that the signers were not legal voters, the duty to establish which devolved upon the plaintiff. The purpose of the petitions and the order of the court are only a method by which the electors may secure the submission of the local option question to the voters; and, the election having been called and the vote taken, the result should not be disturbed by reason of an irregularity in a preliminary proceeding that does not go to the qualifications of the signers. It may be jurisdictional that the petitioners be registered, but that can only be true in case there is a recognized registration, or an opportunity to register. It must be borne in mind that at the time of the signing of the petitions asking for the election, at the time the clerk certified that the petitioners were registered voters, and when the court made the order, as well as when the election was held thereunder, the registration law of 1913 (Laws 1913, p. 623) was recognized as being in force, and that the registration law of 1899 (Laws 1899, p. 119) had been repealed. And to now hold that only voters registered under the 1899 law could petition for the election would be to hold that it was not possible for the voters to petition for a local option election during the year 1913, and also to hold that the state election held on that day was void which was conducted under that registration law. In other words, the 1913 registration law operated as a trap that would defeat a local option election and as a fraud upon the electors of Oregon, namely, that those registered under the 1913

law could not petition because it was void, and those registered under the 1899 law could not petition because, as the law then stood, it had been repealed. But the rights of the voter cannot be so trifled with. So far as the petitions were concerned, they were actually registered under the void law, the only registration that could have been recognized when the court ordered the election; and we will not hold the order calling the election void without proof that the petitioners were not legal voters.

2. Again, it is contended that, because 506 of the votes cast at the election were registered under the 1913 registration law, they were not qualified voters; that they did not, when presenting their votes, take the affidavit blank A of Section 3449, L. O. L., and therefore that their votes were illegal, and the election should be held void. The County Court acted on the registration law of 1913 as a valid law, as did the county clerk, the election officers, and the voters. It was not questioned that those parties' who registered thereunder were legal voters under the Constitution. The registration law was not enacted to add to or take from those qualifications, but only to place a safeguard around the elective franchise; and, although the law was declared unconstitutional because the taking effect thereof was made to depend on the approval of an authority other than the legislature or the vote of the people, yet, until so held void, it operated as such protection to the election of November 4th. The observance of it by the voter was such evidence of his right to vote as would justify the acts of the County Court and the election boards. The voter by his faith in the validity of the law performed every act that would have been required of him under the registration law of 1899, as amended. The County Court, the voters, and the election boards acted with the understanding that the registration law of 1899 and amendments had

been repealed, and the election should not be held void so long as those voting were legally qualified under the Constitution. It was urged at the argument that every voter who is not registered is to be considered challenged, and must swear in his vote upon blank A. If it were now assumed that there was no registration, the affidavit of the voter taken in the attempted registration under the registration law of 1913, containing the facts required by blank A, was before the election boards, and the voters may be deemed to have thereby complied with that requirement, and is no objection to the legality of the election. A duplicate of the registration card was in the possession of the election (Section 4 of the act), and the precinct registers were sent to the several precincts, together with the other election supplies (Section 18). However, if not so considered, the election officers could not have acted other than they did in that particular, and the legality of the election cannot be questioned on that account.

3. The sufficiency of the notice of the election is also questioned by plaintiff. It appears that the city as a political entity is composed of but one voting ward, and for the purposes of the city election but one set of notices would have been required, and but one polling place established; but this was a county election as to the portion of the county included within the city, covering parts of two precincts. Whether two voting places were necessary may well be doubted. As relates to the city, there were no precincts by reason of the neglect of the County Court to constitute the city a precinct or to set it off into such precincts as would have been necessary and convenient under Section 3304, L. O. L., and the home rule amendment of the Constitution (Section 2, Article XI. See *State* v. *Schluer,* 59 Or. 18 (115 Pac. 1057). Under the conditions as then existing, the city could not vote by pre-

cincts, as there were none; the election being necessarily confined within the city limits: *State* v. *Perkins,* 61 Or. 163 (121 Pac. 797). The first notices provided for only one voting place as in city elections. This was in proper form and posted 14 days before the election. Afterward, the county clerk deeming that there should be a voting place in each of the two precincts that included the city, notices were posted within the city in the two precincts; thus providing a polling place in each. However, the last two notices were posted only 5 days before the election, while the statute requires them to be posted at least 12 days. A similar dilemma as to precincts occurred in Lane County (*State* v. *Perkins,* 61 Or. 163 [121 Pac. 797]), and probably in other counties, through the fault or neglect of the County Court in failing to adjust the county voting precincts to meet the changed conditions by the home rule amendment of the Constitution. In any event, it was not possible that the voters did not have notice of the election by virtue of the first notices, as they were the usual notices for the city, and the second notices made no change therein, except to provide an additional voting place; and the election should not be set aside because of the omission of the County Court without proof that some qualified electors were deprived of the right to vote by reason thereof. The notices were a substantial compliance with the requirements of the statute. The election officers made every effort to comply with the law as they understood it, and, no doubt, those efforts were effectual.

4. It is also urged by plaintiff that the local option election can be held only within a city in a year in which there is no general state election, in case the regular city election occurs on the first Tuesday after the first Monday of November. It is true that much uncertainty, trouble and often expense would be avoided if the city would place its regular elections

on that day, but a local option election in a city can-
not be held in an alternate year at the time of the city
election which is not held on the first Tuesday after
the first Monday in November.   Section 4922, L. O. L.,
provides: ''The election hereunder shall be held only
on the first Tuesday after the first Monday in Novem-
ber of any year.   The petition therefor shall be filed
with the county clerk not less than thirty nor more
than ninety days before the day of election.   In every
county, subdivision of county, or precinct thereof that
shall return a majority vote for prohibition, at any
election, the law shall take effect on the first day of
January following the day of election.   The elections
provided for by this act shall be held at the regular
voting place or places within the proposed limits and
by the judges and clerks of election appointed and
qualified under the general election laws of the state,
or if held at the time of a city election, then within
said city or town by the judges and clerks appointed
and qualified under the charter of such incorporated
city or town or under the laws of the state regulating
such city or town election, and the returns thereof shall
be made in conformity with the provisions of the said
general election laws.   [If, under the provisions of
this act, an election shall be demanded wholly or in
part in any incorporated city or town or any ward
or precinct therein, to be held at the time of the city or
town election occurring in a year in which there is no
general election, then the county clerk shall notify the
proper authority of such city or town that such elec-
tion has been demanded in order that such city or town
authority may cause the official ballots to be prepared
in accordance with the provisions of this act, and the
city auditor, or clerk, or recorder, as the case may be,
shall make return to the county clerk of the vote for
and against prohibition in the several precincts of said

city or town, and thereafter said matter shall proceed
as in the case of a general election.]'' The part of
the quotation contained in brackets applies to elections
in cities only in the alternate years, and when the city
election is held on the first Tuesday after the first
Monday in November, in which case the city machinery
may be used to take the vote and certify it to the county
clerk, but it does not apply in the year of a general
state election. The first part of the section above
quoted applies to every county, subdivision of a county,
or precinct thereof as a county election, except if
within a city whose election occurs on the same day,
then within the city it may be held by the city judges
and clerks of election, appointed and qualified under
the city charter or the laws of the state regulating such
city election. But in this case the election was not
held on the day of a city election nor called as such,
being a county election in a subdivision of the county,
namely, the municipality of Hillsboro. Section 4922,
L. O. L., was enacted prior to the home rule amend-
ment of the Constitution, and operates the same as it
did prior to the amendment, except that now the
municipality or any precinct therein is an independent
subdivision of the county. The local option election
is a county election in the county as a whole, or a sub-
division thereof, of which the city is one, and need
have no reference to the date of a city election except
as above mentioned. The home rule amendment ex-
pressly retains the County Court as the agency author-
ized to put into or out of operation orders of prohibi-
tion: See *State* v. *Hearn,* 59 Or. 227 (115 Pac. 1066,
117 Pac. 412). In *State* v. *Perkins,* 61 Or. 163 (121
Pac. 797), the election within the city was called by
the County Court for November 7, 1911, which was,
in fact, the day of the regular city election, and the
election was conducted by its machinery as provided

in the part of Section 4922 quoted in the brackets: *Bellarts* v. *Cleeton,* 65 Or. 269 (132 Pac. 961).

Finding no error in the record, the decree is affirmed.

AFFIRMED: REHEARING DENIED.

MR. JUSTICE BURNETT delivered the following dissenting opinion.

It is conceded in this case that the petition for the local option election in question here was signed in controlling numbers by persons who were registered as voters only under the so-called registration law of 1913, which· this court declared unconstitutional and void in *City of Portland* v. *Coffey,* 67 Or. 507 (135 Pac. 358), decided November 25, 1913. In other words, if the question of whether the signers of the petition were "registered voters" within the meaning of the local option law is to be determined by any other statute than the enactment of 1913, then there were not enough signers to give the County Court jurisdiction to order a local option election.

It is hornbook law "that courts of limited jurisdiction and courts of general jurisdiction, when exercising a special limited power conferred by statute, must show affirmatively that jurisdiction has been acquired." This rule was declared in *Johns* v. *Marion County,* 4 Or. 46, and has been reiterated in a long line of decisions since. This language there used is peculiarly applicable to this case: "Under the statute, the court has no power over the subject until a petition of the prescribed character * * is presented, and it is necessary that the record should show affirmatively that jurisdiction has been thus acquired, or the proceeding cannot be sustained": *State.* v. *Officer,* 4 Or. 180; *State* v. *Myers,* 20 Or. 442 (26 Pac. 307); *Bitting* v. *Douglas County,* 24 Or. 409 (33 Pac. 981); *Cameron* v. *Wasco County,* 27 Or. 318 (41 Pac. 160); *Grady* v.

69 Or.—8

*Dundon,* 30 Or. 333 (47 Pac. 915); *Sime* v. *Spencer,* 30 Or. 340 (47 Pac. 919); *Mulkey* v. *Day,* 49 Or. 312 (89 Pac. 957); *Dean* v. *Washington Nav. Co.,* 59 Or. 91 (115 Pac. 284). More especially is this true when proceedings under the statute, as in this instance, may be commenced and carried as far as making the order for the election without any previous notice or giving any opportunity to contest the validity of the petition.

By the provisions of the local option law the authority of the County Court to submit to the electors the question of prohibition of the sale of intoxicating liquors is made to depend upon filing with the county clerk "a petition therefor signed by not less than 10 per cent of the registered voters" in the territory involved. Such an instrument so signed is therefore a jurisdictional necessity, without which the county court cannot lawfully order an election. It is a restriction which the people themselves have imposed upon that tribunal; for the local option law was enacted by the initiative process. So far as signing the petition is concerned, it is not an exercise of the electoral franchise, and the constitutional right to vote is not involved. It is taught in *Roesch* v. *Henry,* 54 Or. 230 (103 Pac. 439), that, as signing such a petition is not an exercise of the electoral franchise, it is not in derogation of the Constitution to require all such petitioners to be registered voters. There the opinion cites the section of the statute requiring a petition of 10 per cent of the registered voters, and the other section directing the county clerk to compare the signatures on the petition with their signatures on the registration books of the election then pending, or, if none is pending, then with the signatures on the registration books and blanks on file in his office for the preceding general election. The court, speaking by Mr. Chief Justice MOORE, then says: "Construing these clauses *in pari materia,* it is manifest that no qualified

elector or legal voter is a competent petitioner for a local option election unless his signature appears on the registration books of the election then pending; or, if no election be pending, then his signature must appear on the registration books and blanks of the preceding general election. The privilege of signing a petition to initiate a local option election is not a right of franchise in which all electors enumerated in the organic law (Section 2, Article II, Const.) can participate." No voter has an inalienable constitutional right to sign a local option petition; for that privilege is conferred by a mere statute which may be amended or abrogated at any time by the legislative power. The people themselves having declared that signers of such petitions must be "registered voters," it is not for the courts, the creatures of the people, to say that the word "registered" may be eliminated from the statute to suit the occasion or under the circumstances.

Where, then, are we to turn for a definition of the term "registered voters"? Manifestly, not to the registration law of 1913, for this court, in the case of *City of Portland* v. *Coffey,* 67 Or. 507 (135 Pac. 358), has solemnly decided that law to be unconstitutional, not only as to its affirmative provisions, but also as to its repealing clauses. Six judges of the court, sitting in banc, have declared without a dissenting opinion that, in enacting that statute of registration, the legislative assembly violated the fundamental law of the state ordained by the people themselves. If that statute is void as thus determined, no lawful procedure can be founded on its provisions. If it is unconstitutional at all, it is unconstitutional for all persons and for all purposes. It is void for both saloon-keepers and prohibitionists, for both alike are protected or restrained by the Constitution. If the 1913 registration law is powerless to affect a city election in Port-

land, as decided in the Coffey case, it cannot affect a local option petition in Hillsboro, nor make its signers "registered voters."

We cannot properly speculate what the County Court would have done if a petition had been presented to it signed only by voters registered under the former statute. If that were a question before the court, we ought not to presume that tribunal to be ignorant of the law, but rather that it would be as loyal to the Constitution as we are. Neither is it within our province to disturb the settled principles of the law about jurisdiction, in an effort to allay the disappointment possibly experienced by some of the electorate over the error of the legislature in passing an unconstitutional enactment. The situation thus arising can be remedied rightly only by legislative action which lies beyond our authority.

The validity of the state election in November, 1913, is not here involved; for it was held under a general law authorizing it, and this court upheld that statute by unanimous decision of the case of *Equi* v. *Olcott,* 66 Or. 213 (133 Pac. 775). The right to vote is another question to be determined according to the Constitution, irrespective of any conflicting statute.

The question to be settled is whether the petition, that which alone gives a County Court jurisdiction to order a local option election, was signed by a sufficient number of "registered voters" as distinguished from "legal voters." In point of law, there was no registration list made up in 1913 for any election then pending. Under the plain provisions of the local option law as interpreted in *Roesch* v. *Henry,* 54 Or. 230 (103 Pac. 439), the only standard by which it could be determined that the petitioners were "registered voters" was the registration books of the last preceding general election held in November, 1912, with which the signatures must be compared. Tested thus, the peti-

tion was confessedly not sufficient to give the County Court jurisdiction to order the local option election in question. It is settled by the decisions of this court that one in the situation of the plaintiff, as disclosed by the complaint, may attack the order of the County Court directly without waiting to be prosecuted criminally for violation of the law: *Sandys* v. *William,* 46 Or. 327 (80 Pac. 642); *Marsden* v. *Harlocker,* 48 Or. 90 (85 Pac. 328, 120 Am. St. Rep. 786); *Renshaw* v. *Lane County Court,* 49 Or. 526 (89 Pac. 147); *Hall* v. *Dunn,* 52 Or. 475 (97 Pac. 811, 25 L. R. A. (N. S.) 193). Hence the plaintiffs are entitled to urge the objection to the jurisdiction of the County Court in the method adopted in this suit.

It follows, therefore, on the *stare decisis* postulate of the registration law of 1913 being unconstitutional, that the local option petition in question was not sufficient to give the County Court jurisdiction, because it was not signed by the requisite number of registered voters. Being without jurisdiction, the order of the County Court was void, and the election in pursuance thereof was of no effect. The plaintiffs are entitled to a decree according to the prayer of their complaint.

For these reasons, I dissent from the conclusion reached by the majority.