## A. P. ANKENY, APPELLANT, *v.* MULTNOMAH COUNTY, RESPONDENT.

INDEBTED WITHIN THE STATE—WHAT CONSTITUTES, WITHIN THE MEANING OF THE STATUTE.—That part of the Act of December 19, 1865, which de-clares, "It shall be the duty of the Assessor to deduct the amount of indebtedness within this State, of any person assessed, from the amount of his or her taxable property, given under oath," construed. *Held,* 1. That there is an ambiguity in the language of the Act requiring judicial construction; 2. That the language "indebtedness within this State," has reference to the *locus in quo* of the creditor, rather than the place of the payment of the debt; 3. That although the debt sought to be de-ducted from the value of taxable property may have been contracted

and made payable within this State, and although the creditor, at the time the debt was contracted, resided therein, yet if, at the time of the assessment, the creditor is a non-resident of the State, the indebtedness cannot be deducted.

APPEAL from Multnomah County.

An assessment for the year 1871 was duly levied upon the property of A. P. Ankeny, the appellant, a resident of Multnomah County, consisting of lots in the city of Portland, valued at $8050. Ankeny was indebted to one Jemima Wheeler upon a promissory note for $15,000, executed in Portland, and made payable there, secured by mortgage on a portion of said lots. At the date of the loan, and for some time prior thereto, said Wheeler resided in Multnomah County; but at the time the assessment was made and the subsequent proceedings relating thereto were had, her residence was to Ankeny unknown. She was reported to have gone to Washington Territory, whether for permanent residence or not does not appear. Ankeny sought to have his said indebtedness deducted from his assessment. The Assessor refused to allow the deduction to be made. The application having been renewed before the County Court for Multnomah County, sitting as a Board of Equalization, was again refused. These proceedings of the County Court were certified to the Circuit Court on a writ of review, and were there affirmed. From the decision of the Circuit Court, affirming the action of the County Court, this appeal is taken.

*Shattuck & Killen,* for Appellant.

*Addison C. Gibbs,* for Respondent.

By the Court, BONHAM, J.:

This case simply involves a question of statutory construction.

The language of the Act of December 19, 1865 (Mis. Laws, ch. 57, § 16), authorizing the deduction of indebtedness from the assessed value of taxable property, is as follows: "It shall be the duty of the Assessor to deduct

the amount of indebtedness, within this State, of any person assessed, from the amount of his or her taxable property given under oath."

It is claimed, by counsel for appellant, that the question whether the indebtedness is within the State is determined by the place of payment. That it having been agreed, in this case, that the indebtedness of Ankeny to Wheeler was payable at the city of Portland, therefore it was an *indebtedness within this State,* and should have been deducted from his assessment. On the other hand, counsel for respondent claims that whether the debt be *within the State* or not, depends on whether the creditor *resides in the State.*

It is claimed, by counsel for appellant, that the language of the statute, "indebtedness within the State," is so plain and conclusive that it is not susceptible of the construction claimed for it by respondent's counsel, without an invasion by the Court of the prerogative of the lawmaking power.

It is conceded, however, by counsel for appellant, that if the statute read, "indebtedness *to persons* within the State," then respondent's construction would be correct; and it might, we think, with equal propriety, have been admitted, by counsel for respondent, that if the statute read "indebtedness *payable* within the State," that then the construction claimed by counsel for appellant would be correct. But, unfortunately for those who are called upon to incur the expense of finding out what the Legislature did mean, the restrictive words above suggested were not used by our lawmakers, which, if they had been, would have placed the language of the statute beyond the necessity of judicial construction.

It is a well-settled rule of statutory construction that such meaning is to be attached to the language of the lawmaker (especially in the case of remedial statutes), as will effectuate the object and purpose of the law. And we cannot agree with counsel for appellant that the meaning of this statute, as held by the County and Circuit Courts for Multnomah County, was not a legitimate exercise of judicial construction. It is true that it is the duty of Courts to determine the intention of the Legislature from the fair import

of the words of the statute, and not to presume or conclude that something was intended which the language of the law does not warrant. Yet it often occurs from the hasty action or inadvertence of the lawmaker that language is employed which is more or less ambiguous; and it then becomes the duty of the Courts to determine, by the established rules of statutory construction, what was intended.

Chancellor Kent, in discussing this subject, says (1 Kent's Com. 11th edition, p. 501): "The true meaning of the statute is generally and properly to be sought from the body of the Act itself. But such is the imperfection of human language and the want of technical skill in the makers of the law, that statutes often give occasion to the most perplexing and distressing doubts and discussions arising from the ambiguity that attends them. It requires great experience as well as the command of perspicuous diction, to frame a law in such clear and precise terms as to secure it from ambiguous expressions, and from all doubt and criticism upon its meaning."

And the same author further says (Id. 502): "It is an established rule in the exposition of statutes that the intention of the lawgiver is to be deduced from a view of the whole and of every part of a statute taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of terms. * * * When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt and the objects and remedy in view; and the intention is to be taken or presumed, according to what is consonant to reason and good discretion."

See, also, *People* v. *Utica Ins. Co.* (15 Johnson, 357), and *Whitney* v. *Whitney* (14 Mass. 92).

So far then as the specific directions of a statute are clouded by ambiguity, it is the province of the Courts to determine, from the general import of the language used, and the obvious intention of the lawmaker, what was intended in any given particular. In this case, in speaking of "indebtedness within the State," our lawmakers omitted

to express directly whether they meant indebtedness *to persons* within the State, or indebtedness *payable* within the State.

Now, in order to ascertain the true meaning of the words of the statute employed as referred to, let us inquire what was the obvious intent and object of the Legislature in passing the Act of December 19, 1865. The only rational object, and the only one that we have the right to presume was had in view by the Legislature, was the important and equitable consideration of the equalization of taxes. This the Constitution of the State requires of the Legislature, wherein it says (Bill of Rights, § 32), "All taxation shall be equal and uniform." The presumption in the absence of proof to the contrary is, that all officers do their duty. It was and is the duty of the Legislature as far as practicable to see that "all taxation shall be equal and uniform;" hence that must have been their object in passing the law authorizing the deduction of indebtedness within the State from the value of taxable property therein.

If A. buys a tract of land of B. for $5000, and not having the means to pay for it, executes to B. his note secured by mortgage on the land for the purchase price, to require that A. should be taxed for the land, and that B. should be taxed on his note and mortgage, would virtually be a double assessment of the same property. And inasmuch as B.'s note and mortgage are taxable, and A. does not absolutely own any property, because his creditor B. has a lien upon it for its whole value, it would be making taxation equal and uniform to exempt A. and require B. to pay the tax. But again, as a safeguard to the State, the law must provide that the property shall be *once* taxed in every assessment year; because it is situated within the jurisdiction of the State, and is subject to protection by the law. Hence the creditor must be within the jurisdiction of the State, and liable to taxation to exempt the property of the debtor. This is in harmony with our *ad valorem* system of taxation, as well as with the provision of our State Constitution referred to. To hold that the debtor should be exempt when the creditor was a non-resident of the State (as was ad-

mitted to be the fact in this case), would be to hold that
the property might not be taxed at all.

But it may be said that, in this case, when the debt in
question was contracted, Ankeny's creditor was a resident
of the State of Oregon, and that he was not shown to be
privy to the subsequent removal of Mrs. Wheeler from the
State. To this we answer, that in a case of this kind, the
creditor might be considered as the hostage of the debtor;
and if the latter desires to avail himself of the benefits of
the Act of December 19, 1865, he must see that his cred-
itor remains within the jurisdiction of the State, or at least
that he is there at the time of the assessment of the debtor.
To give this law the construction claimed for it by counsel
for appellant, would be to open a door to fraud, evasion
and inequality in taxation, which experience teaches that it
is the duty of the lawmaker to guard against.

For illustration, suppose again that A., being a resident
of Marion County, where taxes are now twenty-five mills on
the dollar, and, having property therein worth $50,000,
should conclude, just before the Assessor should come
around, to borrow $50,000 of his friend B., giving his note
therefor payable at Salem, and with the understanding be-
tween debtor and creditor that the latter should remove
temporarily from the State. By this transaction A. would
realize the snug sum of $1250, although B. might return
to the State within a few days afterward and collect his
$50,000 from A. And such also would be the result if
appellant's position be correct, if B. were, in the first place,
a non-resident of the State.

It might be proper to remark, that the foregoing illustra-
tion was not suggested by the facts in this particular case,
but it is given to illustrate the facility with which the spirit
of the law might be evaded by an act of shrewd financiering,
which it is to be feared would be too often resorted to if
the law in question is to be construed as claimed by appel-
lant.

We think that the language of the statute, "indebted-
ness within the State," has reference to the place of resi-
dence of the creditor rather than the place of the payment

of the debt (*Johnson* v. *City Council of Oregon City*, 3 Oregon, 13); and that a debtor, at the time of his assessment, must be able to show that his creditor is a resident of the State in order to entitle him to the deduction of his indebtedness under the statute.

Judgment affirmed.