[No. 18203.   Department One.—March 20, 1894.]

## THE PEOPLE ex rel. W. B. BROWN, Appellant, v. UNION HIGH SCHOOL DISTRICT OF SOLANO COUNTY, Respondent.

High School District—Petition of Trustees—Corporate Act.—Under the act of the legislature of March 20, 1891, to provide for the establishment of high schools, no corporate act of the board of trustees of the several school districts uniting to form a union high school district is required; but it is sufficient that a majority of the trustees of each of the school districts shall sign the petition to the superintendent of schools for the formation of the union high school district, though not authorized by any corporate act, or resolution of any one of the boards of school trustees of which the signers were members.

Id.—Petition by Resident Electors—Construction of Statute.—The second section of the act of March 20, 1891, providing that the petition of the trustees shall be accompanied by another petition "for the establishment of such high schools, signed by not less than one hundred resident electors of such school district," does not require that the petition shall be signed by one hundred resident electors in each of the common school districts of which the proposed high school district is composed, but the words "such school district" refer to the proposed "union high school district."

Id.—Use of "Such" in Statute.—When the word "such," used in a statute, precedes a noun of singular number, it properly relates to the same noun in the same number, as antecedently expressed and qualified, and especially to the antecedent qualification of that noun, and denotes that the noun which it precedes is to be understood as antecedently qualified.

ID.—ELECTION FOR HIGH SCHOOL—MAJORITY OF VOTES CAST—CONSTRUC-
TION OF STATUTE.—The provisions of the statute that the county school
superintendent shall call an election in each school district, and that the
officers of such elections shall report the result to him, and that if a
majority of such votes be cast in favor of a high school, the superintend-
ent must call a meeting of the boards of school trustees, and proceed to
determine the question of locating the high school, do not require that
there shall be a majority of the votes cast in each district in favor of
the high school, but the statute is properly construed to mean a major-
ity of all the votes cast in the proposed high school district.

ID.—NEGLECT TO HOLD ELECTION IN ONE DISTRICT.—The election having
been regularly called, and all the persons interested having been duly
notified of the time and places at which they would have the privilege
of voting, the neglect to hold an election in one of the school districts
does not vitiate the election.

ID.—APPOINTMENT OF OFFICERS OF ELECTION—PRESUMPTION.—If the requi-
site number of inspectors, judges, and clerks of election was not ap-
pointed, the presumption is, in the absence of a showing to the contrary,
that the deficiency was supplied by the electors present at the time of
opening the polls.

APPEAL from a judgment of the Superior Court of So-
lano County.

The facts are stated in the opinion.

*Attorney General W. H. H. Hart,* and *Crouch & Johns-
ton,* for Appellant.

*George A. Lamont,* and *John M. Gregory,* for Re-
spondent.

VANCLIEF, C.—Information in the nature of *quo war-
ranto,* filed by the attorney general in the superior court
of Solano county, charging that the defendant wrong-
fully claims and exercises the franchises of a duly or-
ganized union high school district, under an act of the
legislature passed March 20, 1891, entitled, "An act to
provide for the establishment of high schools in the
state of California." (Stats. 1891, p. 182.)

A demurrer to the information on the ground that it
does not state sufficient facts was sustained by the court.
The plaintiff declining to amend, judgment was rendered
for defendant, from which plaintiff brings this appeal.

The first section of the act provides that two or more adjoining school districts may " unite and form a union high school district, for the purpose of establishing and maintaining a high school therein."

The second section enacts that "When . . . . a major-ity of the trustees of two or more adjoining school districts shall unite in a petition to the county superintendent, accompanied by a petition for the establishment of such high schools, signed by not less than one hundred resi-dent electors of such . . . . school districts, it shall be the duty of the county school superintendent, within twenty days, to call an election, and appoint the officers to conduct the same, for the determination of such ques-tion. . . . . Said election shall be conducted in the manner prescribed by law for conducting school elec-tions."

Section third provides: "If a majority of such votes cast be in favor of high school, it shall be the duty of the county superintendent to call a meeting of the . . . . boards of school trustees uniting, within fifteen days, ten days' notice of which shall be given to each member of each board, in writing, by the county superintendent. At such meeting the question of locating the high school shall be determined."

The defendant district is composed of eight adjoining school districts of Solano county.

It is contended by appellant that the information shows noncompliance with some of the essential re-quirements of the act expressed in the above extracts therefrom, by reason whereof the union district was never organized as a corporation, and therefore that the court erred in sustaining the demurrer.

1. While it is admitted that a majority of the trustees of each of the eight school districts signed the petition to the superintendent of schools for the formation of the union high school district, it appears that such sign-ing was not authorized by any corporate act or resolu-tion of any one of the boards of school trustees of which the signers were members; and it is claimed that this

was a defect in the procedure which vitiates the organization of the union district.

No corporate action of the boards of trustees of the several school districts was necessary. The act requires only "a majority of the *trustees* of two or more adjoining school districts" to unite in a petition. In this case a majority of the trustees in *each* of the eight school districts composing the proposed union district united in the petition, which was even more than is *expressly* required by the law, though the legislature probably intended that a majority of the trustees of *each* district should unite in the petition, as they did.

2. The second section provides that the petition of the trustees shall be accompanied by another petition "for the establishment of such high schools, signed by not less than one hundred resident electors of such school district."

In this case the accompanying petition was signed by one hundred and seven resident electors of the proposed high school district, but appellant contends that this was not a compliance with the law, and that it should have been signed by one hundred resident electors of each school district composing the proposed union district.

The question is whether the phrase, "such school district," relates to the proposed high school district, or to each of the common school districts of which the proposed high school district is composed.

When the word "such" precedes a noun in the singular number, as in this case—"such school district"—it partakes of the nature of a pronoun as well as that of an adjective (pronominal adjective), and properly relates to the same noun in the same number as antecedently expressed and *qualified;* and especially to the antecedent *qualification* of that noun; and denotes that the noun which it precedes is to be understood as antecedently qualified. In the statute under consideration, the singular compound noun "school-district" is found to precede the word "such" twice; but quali-

fied in both instances by the words, "union high," thus: "union high school district"; and to this qualification it is that the pronominal adjective, "such," relates as its antecedent, thus making it quite clear that the phrase—"such school district" means the "union high school district," and not the school districts of which it is composed, and which are antecedently expressed in the plural only. And this conclusion is considerably strengthened by the improbability that the legislature assumed that each of the school districts entitled to unite in the formation of a high school district contained one hundred resident electors; since a common school district may contain only ten families and only fifteen census school children. (Pol. Code, sec. 1577.)

3. The act requires the county school superintendent, within twenty days after the receipt of the petitions, to call an election, and to appoint officers to conduct the same, and also to give notice of such election by posting not less than three notices "for each district concerned, one of which shall be upon the schoolhouse in each district at least ten days before said election"; and that "said election shall be conducted in the manner prescribed by law for conducting school elections." The law further provides: "It shall be the duty of the officers of such elections to report the result of such elections to the county superintendent of schools. If the majority of such vote be cast in favor of a high school, it shall be the duty of the county superintendent to call a meeting . . . . of the boards of school trustees uniting, within fifteen days, ten days' notice of which shall be given to each member of each board, in writing, by the county superintendent. At such meeting the question of locating a high school shall be determined."

An election was called and notice thereof given as required by the act. In each of six of the common school districts a majority of the votes cast were in favor of the high school; in one the majority of votes was opposed to the high school, and in one no election

was held; but a majority of all the votes cast at the election was in favor of the high school.

Counsel for appellant contend that, to authorize the organization of the high school, it was necessary that an election should have been held in each of the eight districts, and that a majority of the votes cast in each should have been in favor of the high school; although they admit that it is not so expressed in the statute.

The statute provides that the superintendent shall "call an election . . . . for the determination of such question"; and "if a majority of such votes be cast in favor of a high school," the superintendent must call a meeting of the boards of school trustees, and proceed to determine the question of locating the high school. I think the court below did not err in construing this to mean a majority of all the votes cast in the proposed high school district.

The election having been regularly called, and all persons interested having been duly notified of the time and places at which they would have the privilege of voting, their neglect to hold the election at one of the eight places designated did not vitiate the election. Such neglect indicated only that the electors of the precinct at which no election was held were indifferent as to the result. It would hardly be contended that the neglect or failure of the electors to hold an election for county officers in one of the several election precincts of the county would vitiate the election, or that an illegal election in one precinct would have that effect.

4. It is contended that the election was not "conducted" in the manner prescribed by law for conducting school elections, in that it "was conducted by one inspector and two judges" appointed by the superintendent in each school district.

For the election of school trustees, section 1596 of the Political Code, as amended March 20, 1891, in force when the election in question was held, provided: "The trustees must appoint the inspectors, judges, and clerks

of election; if none are so appointed, or if they are not present at the time of opening the polls, the electors present may appoint them."

If the requisite number of inspectors, judges, or clerks was not appointed, the presumption is, nothing to the contrary being alleged in the information, that the deficiency was supplied by the electors present at the time of opening the polls.

5. As I think the foregoing properly disposes of all the points made by appellant, it is not necessary to consider the point made by respondent, that if there were any irregularities in the proceeding to organize the high school district, they were validated by the tenth subdivision of section 1671 of the Political Code, as amended by the act of March 23, 1873.    (Stats. 1873, p. 276.)

My conclusion is that the judgment of the lower court should be affirmed.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

HARRISON, J., GAROUTTE, J., PATERSON, J.