Submitted on brief October 26, affirmed November 24, 1914.

STATE EX REL. *v.* HALL.

(144 Pac. 475.)

**Statutes—Construction—Purpose of Laws.**

1. Such meaning is to be attached to the language of a statute as will effectuate the object and purpose of the law.

**Schools and School Districts—Creation of Union District—Call of Special Election.**

2. Under Section 4194, L. O. L., as amended by Laws of 1911, page 78, providing for the union of several school districts for high school purposes, and requiring the district boundary board, when sufficient petitions for an election for such purpose are presented to the board, to direct in writing the respective school boards of the districts to be united to give the notices of election, a written notice of the district boundary board to the school boards, directing them to call a special election for that purpose at a certain time, is sufficient, without being in the form of an order calling the election.

[As to meaning of "adjacent" in statute relating to annexation to school district, see note in Ann. Cas. 1913B, 171.]

**Schools and School Districts—Creation of Union District—Call of Special Election.**

3. On receiving the direction from the district boundary board, the school directors have no discretion, but must give the notices

required; and a regular meeting of the district boards is not necessary to authorize the presidents and the secretaries to sign the notices.

### Schools and School Districts—Creation of Union Districts—Constitutionality of Statutes.

4. Section 4194, L. O. L., as amended by Laws of 1911, page 78, providing for the union of several school districts for high school purposes, is not contrary to Article IV, Section 1a, of the Constitution, giving the initiative and referendum to the districts, as authorizing a larger district to extend its boundaries over a smaller district against the will of the latter, since the electors at such election act as members of the proposed union high school district; the election being held in the local districts only for convenience.

### Schools and School Districts—Creation of Union Districts—Constitutionality of Statutes.

5. The legislature had power to enact the statute, under Article XI, Section 2, of the Constitution, authorizing the formation of corporations under general laws.

### Schools and School Districts—Creation of Union District—Election—"Call."

6. Under Section 4194, L. O. L., as amended by Laws of 1911, page 78, providing for the creation of a union high school district, and requiring the district boundary board to direct the school boards of the district to give the notices of election, a direction by the district boundary board to the school boards to call the election is sufficient, since "call" involves more than a mere determination that the election be held, and requires that determination to be communicated, and is used in Section 4083, L. O. L., providing for the manner of giving notice, as synonymous with "notice."

### Schools and School Districts—Creation of Union District—Notices—Necessity—Sufficiency.

7. Under Section 4194, L. O. L., as amended by Laws of 1911, page 78, providing for an election for the creation of a union high school district, the giving of the notice of a special election by the school boards, which states the time and place of the election, is mandatory; but the requirement for the statement of the details of the election is directory.

### Schools and School Districts—Creation of Union District—Notice of Election—Sufficiency.

8. Under Section 4194, L. O. L., as amended by Laws of 1911, page 78, requiring a petition for an election for the formation of a union high school district to designate the site for the building, and to ask for the giving of notices of an election to be held at a certain time and place, it is not necessary that the election notices state the location of the building.

### Schools and School Districts—Directors—De Facto Chairman.

9. One who had been regularly elected as school director and had acted as chairman of the board for some time, being recognized as such by the sheriff of the county and by the county school superintendent and the other directors, is a *de facto* chairman, whose signature to a notice of a special school election is sufficient.

Schools and School Districts—Creation of Union District—Notice of Election.

10. A notice of election on the question of uniting five districts into a union high school district, under the provisions of Section 4194, L. O. L., as amended by Laws of 1911, page 78, which stated the question as whether only the particular district in which the notice was posted should be united into the union high school district, substantially complies with the law, and is sufficient.

Schools and School Districts—Creation of Union District—Irregularities in Election Notice.

11. Where a special election was held under the provisions of Section 4194, L. O. L., as amended by Laws of 1911, page 78, on the question whether five districts should be united into a union high school district irregularities in the notices posted in two of the districts will not invalidate the election, at which the majority voted for the union, if the votes of all electors not voting in those two districts could not have changed the result.

From Grant: DALTON BIGGS, Judge.

In Banc.    Statement by MR. JUSTICE BEAN.

This is an action by the State of Oregon on relation of S. R. Birdwell and Herman Kuhl, against William Hall, G. T. Meador and H. O. Meador, substituted for William Hall, A. B. Carlson, R. L. Dearforff and L. B. Parsons, to oust the defendants from their respective offices as directors of Union High School District No. 1 of Grant County, Oregon, and to annul the organization of the district. The action was tried by the Circuit Court upon an agreed statement of facts. The court made findings and conclusions of law, and rendered judgment in favor of the defendants. The relators appeal.

Submitted on briefs without arguments under the proviso of Rule 18 of the Supreme Court: 56 Or. 622 (117 Pac. xi).                                    AFFIRMED.

For appellant there was a brief over the names of *Mr. V. G. Cozad,* District Attorney, and *Mr. Errett Hicks.*

For respondents there was a brief over the name of *Mr. George H. Cattanach.*

MR. JUSTICE BEAN delivered the opinion of the court.

The action is brought under Section 366, L. O. L., which authorizes an action at law in the name of the state, upon the information of the prosecuting attorney, or upon the relation of a private party, against the person offending:

"(1) When any person shall usurp, intrude into, or unlawfully hold, or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation either public or private, created or formed by or under the authority of this state; or * * (3) when any association or number of persons act within this state, as a corporation, without being duly incorporated."

On July 31, 1912, a petition was filed with the district boundary board of Grant County from each of school districts Nos. 4, 5, 9, 10 and 14, in which the boundary board was petitioned to direct the school boards of the several districts to call a school meeting or election in each district for the purpose of voting on the question of uniting the five districts for high school purposes only. On the 17th day of August, 1912, the boundary board met and made an order granting the prayer of the petitions, and directing that union high school consolidation elections be held in the respective school districts on the 3d day of September, 1912. A record of the meeting of the district boundary board was duly made and signed by the county judge, as *ex-officio* chairman, and the county school superintendent, as secretary, of the district boundary board. The record recites that each petition was signed by the requisite number of legal voters of the respective school

districts. The sufficiency of the petitions is not questioned. The written notices of the district boundary board directed the respective school district boards "to call a special school election" in their districts on Tuesday, the 3d day of September, 1912, at 1 o'clock p. m., for the purpose of voting upon the following question, to wit:

"Shall school districts Nos. 4, 5, 9, 10, and 14 of Grant County, Oregon, be united into a union high school district, and maintain a union high school in the town of Prairie City, Grant County, Oregon?"

Each notification contained the names of the directors and the clerk of the proper district, was served by the sheriff upon the chairman of each board of directors and the clerk of each of the school districts, and a return thereof certified. By virtue of the order and notification of the district boundary board, notices of an election to be held in the districts named on September 3, 1912, at 1 o'clock p. m., were posted in public places in each district more than ten days prior thereto. Pursuant to said notices at the time and place designated therein elections were held and a vote taken by ballot, which was tallied, counted and returned and canvassed, resulting as follows: "For union high school, Yes, 121; for union high school, No, 44"—leaving a majority of 77 in favor of the same. The district boundary board notified the respective school boards concerned of the result, and declared the territory comprising such districts to be high school district No. 1.

1. It is the contention of the plaintiff that the order directing the elections to be held is void, for the reason that the statute gives the board no authority to call the election. This involves the construction of the statute. It is a well-settled rule of statutory construc-

tion that such meaning is to be attached to the language
of the lawmakers as will effectuate the object and
purpose of the law: *Ankeny* v. *Multnomah Co.,* 4 Or.
271, 273.

2. Section 4194, L. O. L., as amended by Laws of
1911, page 78, provides as follows:

"Whenever it is desired to unite two or more con-
tiguous school districts or parts of districts in this
state for high school purposes only, a petition from
each district shall be presented to the district boundary
board setting forth specifically the districts or parts
of districts it is proposed to consolidate, and also the
site for the location of the union high school building.
* * Said petition shall request the district boundary
board to direct the school boards of each district desig-
nated in the petitions to state in the notice for the next
annual school meeting or election, or at a special meet-
ing or election, called for that purpose, the time of
such meeting or election to be designated in said peti-
tions that the question of uniting said school districts
for high school purposes only, thus forming a union
high school district, will be submitted. Within ten
days after receiving such petitions, the district bound-
ary board shall direct, in writing the respective school
boards of the districts to be so united, to give the
notices as requested in the petitions. * * The vote
on the question is to be by ballot, and the ballot shall
have written or printed thereon the words: 'For Union
High School—Yes.' 'For Union High School—No.' "

A return of the election is required to be made to
the boundary board, which within ten days after re-
ceipt of the sealed returns shall canvass the votes, and
if a majority of all votes cast is in favor of uniting
such districts, the boundary board shall immediately
notify the respective school boards concerned of the
result and declare the territory comprising such dis-
tricts to be a union high school district.

It is clear from the statute that the legislature in-
tended to provide a means whereby the question of
organizing a union high school district could be sub-
mitted to the legal voters of the school districts inter-
ested, either at an annual or at a special meeting or
election.    Such an election is authorized to be held by
virtue of the procedure pointed out by the statute, which
provides that the district boundary board, when proper
petitions are filed therefor, within ten days thereafter
shall direct in writing the respective school boards of
the districts to be united to give the notices as requested
in the petitions.    When such petitions are presented
to the boundary board, it is the duty of such board to
determine whether the petitions are as required by the
statute and signed by the requisite number of legal
voters in each of the districts petitioning to be united
as a union high school district.    In the proceedings in
question it was determined by the district boundary
board at a meeting regularly held that the petitions
were sufficient and so signed.    Whereupon no objec-
tions being made, the board fixed the time for holding
the elections as prayed for in the petitions.    This was
all the official action necessary to be taken in order to
authorize the election in the first instance.

The position of counsel for the plaintiff is that the
statute does not give the district boundary board the
power to call or authorize the election, and that this
must be done by the various district school boards.
Counsel invoke the rule that where the election is
special, and the order of some court or other body is
required as a preliminary step for the holding of such
an election, the absence of such order will render the
election void—citing *Marsden* v. *Harlocker,* 48 Or. 90
(85 Pac. 328, 120 Am. St. Rep. 786).    It should be
noticed that the statute providing a means for the

creation of a union high school district does not require any formal order, judgment, or decree for the holding of the election. Such order *is* required by the law, known as the ''local option law,'' which was under consideration in the case of *Marsden* v. *Harlocker.* It is only where such an order is required by law that the absence thereof will render the election void. It is unimportant whether or not the direction to the different school boards is given by the boundary board in the form of an order, so long as the boundary board directs in writing the different school boards to give the notices of election as requested by the petitions By doing this, after proper petitions have been filed, the boundary board authorizes the election, and the requirements of the statute are complied with.

3. Direction to give notice of such a meeting or election comes to the school board of the district as a mandate from the district boundary board, and the directors have no discretion in the matter. There is no alternative but for the school directors to give notice of or call the special election as directed. In case of the organization of a union high school district, the duties of the school district officers differ in character from those where the authority for a special meeting or election emanates from the board of directors, as was the the case in *Riggs* v. *Polk County,* 51 Or. 509 (95 Pac. 5). Objection is made because the board of directors of the different school districts did not hold regular meetings to order the giving of notices of elections. In giving the notices as directed the school district officers act as the ministerial officers of the district boundary board, as it were, and it was not essential that a regular meeting of the board of directors be held to empower the chairman and clerk to sign and post the notices. This had already been

sanctioned and directed by the district boundary board pursuant to the statute. Authority for such an election from two different boards is not required by the law.

4. It is suggested that the act of 1911 amending Section 4194, L. O. L., is repugnant to Article IV, Section 1a, of the Constitution, providing for local government, in that a school district of the third class would be within the power of one of the first or second class, and that the rule announced as to the extension of the boundaries of a municipality in the case of *State ex rel.* v. *Port of Tillamook,* 62 Or. 332, 339 (124 Pac. 637, Ann. Cas. 1914C, 483), is applicable. With this contention we are not in accord. The object of the statute is to provide a means for the creation of a union high school district. The election is held in the school districts interested as a convenient method of conducting the same, as they have the machinery or organization necessary therefor. Nevertheless the electors at such an election exercise the right of franchise as members of the proposed union high school district, that being the unit comprising the limits of the locality in which the legal voters pass upon the local measure. This does not contravene Article IV, Section 1a, of the Constitution, but is in harmony therewith.

5. We do not think that the constitutionality of the act is doubtful. It is within the province of the legislature to provide by a general law for the formation of such a district. Corporations may be formed under general laws: Article XI, Section 2, Constitution; *Straw* v. *Harris,* 54 Or. 424 (103 Pac. 777).

6. It is objected that the boundary board directed the school boards "to call a special school election" in their respective districts, instead of directing them to

give the notices requested. It is clear that in notifying the district boards the use of the words "call a special school election" were intended by the district boundary board, and were understood by the school boards, to indicate that notices of election should be given, as was done. A call of a meeting in the legal sense of the term is a summons or notice to the parties entitled to meet, directing them to do so. It involves something more than a mere purpose or determination on the part of the caller. It implies a communication of that purpose or notice to the parties to be affected: 1 Words and Phrases, 944. The manner of giving such notice is regulated by Section 4083, L. O. L., which directs that all regular and special school meetings must be convened by a "written call," stating the objects of such meeting, signed by the chairman of the board and the district clerk, or a majority of the district school board, and that such "written notices" shall be posted, etc. In this statute the words "call" and "notices" are used synonymously in the same sense as the word "call" was used by the district boundary board. The boundary board directed each of the school boards in writing as follows:

"You are hereby notified to call a special school election in school district No. —— of Grant County, Oregon, on Tuesday, the 3d day of September, 1912, at the hour of 1 o'clock P. M. of said day, for the purpose of voting in said district upon the following question, to wit: 'Shall school districts Nos. 4, 5, 9, 10, and 14 of Grant County, Oregon, be united into a union high school district and maintain a union high school in the town of Prairie City, Grant County, Oregon?' "

This document was accessible to every voter in the several districts.

7. It is objected that the notices given by the school district officers are not sufficient in form to properly submit the question to the voters. Under the provisions of Section 4194, L. O. L., as amended, the giving of a notice of such special election is a condition precedent to the holding of a valid election: *State* v. *Sengstacken*, 61 Or. 455 (122 Pac. 292, Ann. Cas. 1914B, 230). In such notice the time and place are generally essential, but many of the details as to the conduct of elections are usually regarded as directory: 1 Dillon, Municipal Corp. (3 ed.), Section 197, and note.

8. The substance of the notices in districts numbered 4, 5, 10 and 14 were in the following form:

"Notice is hereby given to the legal voters of school district No. —— of Grant County, State of Oregon, that a special school meeting of said district will be held at the schoolhouse on the 3d day of September, 1912, at 1 o'clock in the afternoon, for the following object: Shall school districts Nos. 4, 5, 9, 10, and 14, of Grant County, Oregon, be united into a union high school district?"

The blanks were properly filled and the notices signed by the respective chairman of the board and the district clerk. It is contended that the notices should state the high school site. The statute directs that the petition shall request the district boundary board to direct the school boards to—

"state in the notice for the next annual school meeting or election, or at a special meeting or election, called for that purpose, the time of such meeting or election to be designated in said petitions, that the question of uniting said school districts for high school purposes only, thus forming a union high school district, will be submitted."

73 Or.—16

There is nothing in the statute requiring the notices to contain a description of the high school building site. The notices give the date, time and place of election. They name the districts and state that the election is held for the purpose of deciding whether or not these districts shall be united into a high school district. This is all that the law requires. We hold that the notices in the above-named districts were sufficient in this respect.

9. Further objection is made to the notices in district No. 5 that they were not signed by the chairman of the board of directors. At that time A. B. Carlson, who had been regularly elected as a director, was supposed to be the regular chairman of the board, and acted as such for some time. He was recognized generally as such chairman by the sheriff in his return of service, by the county school superintendent, and by the other directors and clerk of his district. His act in so signing the notices would have as much force as that of a *de facto* officer. As such chairman he signed the notices over the words "Chairman Board of Directors." The notices were posted for the proper length of time. Under these circumstances it cannot be held that the voters did not have sufficient notice. The signature of the notice at the most amounted to nothing more than an irregularity, and the election representing the will of the people should not be vitiated on account thereof: *Sprague* v. *Norway,* 31 Cal. 173.

10. The notices in district No. 9 were signed by the proper officers, and the proper date, time and place of election were given. The purpose of the election was stated as follows: "Shall school district No. 9 of Grant County, Oregon, be united into a union high school district?" While the notice

states the purpose of the election in general terms, it is nevertheless sufficient to put every voter in the district on inquiry, and taken in connection with the other record available in the district, referred to above, which was accessible to every voter, we think it was sufficient to inform the voters that there was to be an election, the time and place of the same, and also the purpose thereof. If additional information had been required by the electors, it could have been obtained by inquiry from the clerk, or from the chairman of the board. We therefore think there was substantial compliance with the statute as to giving the notice in this district.

11. There is an additional reason why the elections in the proposed union high school district, whereby the desire of the voters was expressed, should not be annulled. It is admitted or shown by the poll list that in district No. 5 there were 26 legal voters, 15 of whom signed the petition, 16 votes cast, and 10 possibly not voting; that in district No. 9 there were 21 legal voters, 12 petitioners, 9 votes cast, and 15 possibly not voting. It therefore appears that a majority of the legal voters in each of districts Nos. 5 and 9 signed the petitions for the union high school. If all of the 25 electors in those two districts, who did not participate in the elections, had cast their ballots against the proposition, it would not have changed the result. Therefore, this case comes within the rule laid down in *Roesch* v. *Henry,* 54 Or. 230 (103 Pac. 439). It is now a canon of election law that an election is not to be set aside for a mere informality or irregularity, which cannot be said in any manner to have affected the result of the election. When it appears that no different result would have been possible in the entire district affected by the majority vote, the failure strictly to comply with

the requirements of the statute in respect to giving the notice will not invalidate the election: *Roesch* v. *Henry,* 54 Or. 230 (103 Pac. 439) ; *State* v. *Sengstacken,* 61 Or. 455 (122 Pac. 292) ; *Sharp* v. *George,* 5 Ariz. 65 (46 Pac. 212) ; *People* v. *Union High School District,* 101 Cal. 655 (36 Pac. 119).

It appears from the record of the proceedings for the organization of a union high school district that there was a strict compliance with the statute in the proceedings by the boundary board and by all the school district officers, except in districts Nos. 5 and 9, where there was a substantial compliance with the law. There was no irregularity or want of formality that could have changed the result of the election. We therefore find that Union High School District No. 1 of Grant County, Oregon, was legally established.

The judgment of the lower court will therefore be affirmed.                                    AFFIRMED.