17 189
18 557
20 31
20* 95
23* 665

17 189
23 483
20* 95
32* 298

17 189
33 393

[Filed December 20, 1888.]

## J. E. FENTON, APPELLANT, *v.* RODNEY SCOTT, RESPONDENT.

EVIDENCE — ELECTION CONTEST — ONUS PROBANDI. — The law is well settled that the burden of proof is on the plaintiff, when he seeks to introduce the ballots to overturn the official count, to show affirmatively that the ballots have not been tampered with, and that they are the genuine ballots cast by the voters.

ID. — BALLOTS BEST EVIDENCE OF INTENTION OF VOTER — IDENTITY OF MUST BE FIXED BEYOND REASONABLE DOUBT. — While the ballots when identified are the best evidence and are to prevail over the official count, yet to entitle them to be resorted to and be recounted, the facts going to show their preservation must fix their identity beyond all reasonable doubt.

BALLOTS PROOF OF IDENTITY — CHARACTER OF EVIDENCE TO ENTITLE SAME TO BE RECEIVED. — But this does not require that they must be proved genuine beyond all possible doubt, or beyond a *mere possibility* that they might have been interfered wtih. All that is required is that they be proved intact and genuine with a reasonable degree of certainty, and to the full satisfaction of the court.

EVIDENCE — BALLOTS, PROOF OF IDENTITY OF. — Where the facts found do not disclose affirmatively that the ballots have been so safely preserved as to satisfy the trial court, beyond reasonable doubt, of their integrity or identity, and as a legal consequence refuses to recount them to overturn the official count: *held,* that their rejection was no error.

VOTER — INTENTION OF. — Where a ballot discloses a name written opposite to a printed name erased, the intention of the voter is to substitute the written for the erased name.

ID. — WHERE UPON A BALLOT THE NAMES OF TWO REPRESENTATIVES were erased, and opposite, but slantingly in consequence of the narrow margin upon which to write, two other names are written, and one of the names so written was a candidate for county judge on another ticket, but the printed name of the county judge on such ticket was not erased: *held*, that the facts did not disclose a case within the provisions of section 2528, Oregon Code.

APPEAL from the Circuit Court for the county of Lane.

*L. Bilyeu* and *J. J. Walton*, for Appellant.

*Washburn & Woodcock* and *Condon & Dorris*, for Respondent.

LORD, J.—This was a proceeding under the provisions of title 4, chapter 14, sections 2544–2548, Oregon Code, to contest the right of the defendant to the office of county judge of Lane County, to which he was declared elected by the board of canvassers of said county.

Without adverting to the pleadings, it is sufficient to say the contest proved adverse to the contestant, and it is from the judgment rendered therein that this appeal is brought.

There are but two questions presented by this record, or in fact earnestly urged by counsel for the contestant, which we shall deem it necessary to consider. One of the main questions — in fact, the main one argued in the brief—which counsel for the contestant seeks to raise is the same question as counsel for the defendant sought to raise in *Hartman* v. *Young, ante*, p. 150, just decided, namely, that the proceeding under the statute to contest an election is in the nature of a suit in equity, and is to be tried by this court *de novo* upon the evidence, or failing in that, that it is the duty of this court to say as a matter of law, upon the evidence as to their safe preserva-

tion, that the ballots were the best evidence and entitled to be recounted.   Both of those questions were decided adversely to this contention in *Hartman* v. *Young,* and we must refer to them, without further argument, for an expression of our views.

But there is no difficulty upon the facts found and presented by this record in having considered the identical question claimed as error and decided.

The findings of the court in this case are stated with a fullness, particularity, and accuracy that is creditable, and in a way that enables this court to determine the correctness of the legal conclusions drawn therefrom.   And this is especially so in regard to the facts found as to the care taken of the ballots and all other matters in relation thereto, so that the correctness of the conclusion drawn by the trial court and questioned by counsel for the contestant is fully presented for our consideration and decision.

In a case like this, the law is well settled that the burden of proof is on the plaintiff when he seeks to introduce the ballots to overturn the official count to show affirmatively that the ballots have not been tampered with, and that they are the identical ballots cast by the voters. The authorities to this point are numerous, and are cited and discussed in *Hartman* v. *Young,* and need not be recalled here.   The inquiry now is, Is the legal conclusion which the court below draws upon the facts found such as the law pronounces ?

Upon the findings of fact as to the ballots of North Eugene and South Eugene precincts, the trial court declared as a conclusion of law that they were not "sufficiently identified to entitle them to be received in evidence to contradict the official returns," and consequently rejected them.   The reason for this, in law, must have been because, under the facts, there was a want of

that affirmative showing necessary to establish the identity of the ballots as the ones actually cast by the voters of those precincts.

Without unnecessarily encumbering the record, the court found as follows: "That the poll-books and sealed packages purporting to be the ballots cast at said election in North Eugene precinct, and the poll-books and a like package purporting to be the ballots cast at said election in South Eugene precinct, were delivered to the clerk of Lane County, Oregon, by one of the judges of the election from each of said precincts some time between June 4, 1888, and June 8, 1888, — the exact date of said delivery does not appear from the evidence in this case; that said package purporting to be the ballots of said precincts were by said clerk deposited in a safe in his office, where they remained until the official canvass of the vote of said county was made, on June 8, 1888, when they were taken from the said safe of the said clerk and deposited in an open pigeon-hole in the vault, where they remained until about two days after this contest was instituted. The said vault is a room adjoining the office of said clerk, in which the public records are kept, and opens into said office, and is accessible to and used by any person who may have occasion to examine the public records of said county, and such persons pass in and out of said vault during office hours whenever they desire so to do; that owing to some defect in the door of the vault it cannot be and was not closed at any time during the time said ballots were so deposited therein; that said clerk or his deputy was generally in said office during office hours, but occasionally for a short time both would be out and the door of said office not locked; that said packages were taken from the vault by said clerk, and he testified on this trial that he found them in just the same condition as they were when he put them in, and that they have remained

in his possession ever since delivered to him, and he did not know of any one handling said ballots but himself, and in his opinion they were in the same condition when offered in evidence on this trial as when delivered to him by the respective judges of said election, and that the said packages or either of them had not been opened to his knowledge since they were delivered to him; that said package purporting to be the ballots of North and South Eugene precincts, respectively, were sealed up when offered in evidence in this case, and were each opened by the judge of this court in the presence of the parties hereto, and their counsel, and counted with the result stated in my twelfth and eleventh findings of fact; that no evidence was offered or given on said trial, showing or tending to show that the package delivered to said clerk, purporting to be ballots of North Eugene precinct cast at said election contained all the ballots so cast, or when said package was sealed up, or by whom, or how long after said election before the same was delivered to the county clerk, or in whose possession or custody the same remained during said time; that the judges of election of South Eugene precinct sealed up or intended to seal up all the ballots cast at said election in said precinct after the count was completed, but there was no evidence offered or given on this trial showing or tending to show what time elapsed between the time said ballots were so sealed up and their delivery to the county clerk, or in whose possession or control the same were during said time, or whether the ballots so sealed up was the same package delivered to the said county clerk."

It will be noted, according to the facts found, that the packages purporting to contain the ballots of each of these precincts were identified by the clerk as the packages delivered to him by one of the judges of each of said precincts; that a part of the time he kept them in his safe in

XVII. OR.—13

the office, and another part of the time in an open pigeonhole in the vault; that the vault was not locked in consequence of some defect in the door, which prevented it from being locked, and that persons who wished to examine the records had access to the vault, but that the packages were in the same condition as when he received them, and were sealed when offered in evidence. Taking these facts as to their safe-keeping and identity, stretching from the time of his receipt of the packages until they were called for by this contestant, there was reasonable certainty that they and their contents had been preserved inviolate, but prior to their delivery to the clerk, and between that and the day when the election took place, there is an hiatus or gap which fails to make that affirmative showing that the law requires must be made to appear to overturn the official count.

While the ballots, when identified, are the best evidence, and are to prevail over the official count, yet to entitle them to be resorted to and recounted, the facts going to show their preservation must fix their identity beyond any reasonable doubt. If there has been such negligence in respect to their safe-keeping as to create reasonable doubts as to their integrity, there is a want of that affirmative showing which the law requires to entitle the votes to be recounted, and overturn the official canvass.

"It is incumbent on the party," said Church, C. J., "offering the evidence to show that they had been so kept, not beyond a mere possibility of interference, but that they were intact to the satisfaction of the jury. . . . . It is not sufficient that a mere probability of security is proved, but the fact must be shown with a reasonable degree of certainty." (*People* v. *Livingstone*, 79 N. Y. 290.).

"All that is required is, that they be proven intact and genuine, with a reasonable degree of certainty, and to the

full satisfaction of the court. But this does not require
that they must be proved genuine beyond all possible
doubt, or beyond a *mere possibility* that they might have
been interfered with. This would be practically to exclude
them entirely under any circumstances." (*O'Gorman* v.
*Richter*, 31 Minn. 31.)

Now, to avoid repetition, it will be sufficient to say, by
recurring to the latter part of the findings, as to each of
these precincts, there is a want of facts to disclose their
identity during the period adverted to. There is no
affirmative showing whatever, and we cannot bridge over
the chasm by inference or speculation.

From the time when the count of the ballots began on
the day of the election through all their migrations the
ballots should be traced or accounted for, how enveloped,
in whose custody deposited, and how kept, with reference
to their preservation, until their delivery to the clerk.
It may be that the trial court was disposed to draw the
line sharply and critically, but to establish the identity
of ballots, strictness of proof is required, — so strict as to
their safe-keeping as shall exclude all reasonable doubt.

Upon the facts found, we are of the opinion that the law
was rightly declared, and the evidence properly rejected.

The next question embodies two objections, and that is,
that the conclusions of law as declared in numbers five
and seven are not supported or authorized by the find-
ings of fact respectively upon which they are based,
namely, the ninth and twentieth findings of facts.

The twentieth finding is thus: "That there was cast in
Mohawk precinct at said election one ballot upon which
the name Joel Ware, candidate for county clerk, had been
erased, and the name J. E. Fenton written in pencil for
said office, and upon which the name Rodney Scott, can-
didate for county judge, had been erased, and the name
L. Bilyeu written in pencil for said office; that there was

no candidate by the name of J. E. Fenton for the office
of county clerk, and no candidate for the office of county
judge by the name of L. Bilyeu; there was no candidate
for this office by the name of Fenton at said election for
any office except this contestant for the office of county
judge; that this ballot was not counted by the judges and
clerks of said precinct for contestant for county judge."

Upon this finding the court declared, as a conclusion
of law, that "this ballot should not be counted for contest-
ant J. E. Fenton for the office of county judge."

The point presented and claimed to be error can be
best shown by exhibiting the ballot:—

For Clerk.
~~JOEL WARE.~~   J. E. FENTON.

For Treasurer.
J. S. LUCKEY.

For County Judge.
~~RODNEY SCOTT.~~   L. BILYEU.

The contestant claims that this ballot should have been
counted for him for the office of *county judge.*

In the absence of evidence *aliunde,* the intention of the
voter is to be obtained from the face of his ballot. He
has the lawful right to vote for others than those named
and printed as candidates for the offices upon the ballots,
or to vote for the candidates for other offices than those
for which they have been nominated and placed upon the
ticket. Nor is there any more decisive way of manifest-
ing that intention than to mark out one name for a cer-
tain office designated and insert in the place thereof, or
write directly opposite thereto, the name of some other
person.

Looking at the face of this ballot, the voter has by his
own deliberate act scratched out the name of Joel Ware,

placed upon the ticket as candidate for clerk, and has written in place thereof J. E. Fenton, which we must take to have been his choice for that office, and not for county judge, and consequently there was no error in the law as declared by the court upon the facts stated.

As the next finding over which a contention is raised is long, the point may be more concisely presented by the face of the ballot. In explanation it is necessary to say that the margin to write on the ticket was narrow and not to exceed one half-inch in width, and doubtless accounts for writing the names in the slanting manner in which they appear on the ballot: —

Representatives.
{
C. K. HALE.
~~GEO. A. DORRIS.~~ *STAFFORD.*
~~D. R. HARRIS.~~ *R. SCOTT.*
}

County Judge.　J. E. FENTON.

The ticket was counted for the plaintiff Fenton by the judges of the election, but upon the facts as found the court held, by its legal conclusions, erroneously, and that it should be deducted from his vote, and not counted for either party. Scott was candidate for county judge on the other ticket, and the argument is, that as the name of Fenton is not erased, there are two candidates voted for by this ballot for the office of county judge, and that the case brings it within the provision of section 2528 of Oregon Code, that "if the ballot shall be found to contain a greater number of names for any office than the number of persons required to fill that office, it shall be considered fraudulent as to the whole of the names designated to fill such office, but no other."

The face of the ticket shows that the voter had erased the names of two of the candidates for representative, and in proximity thereto, as much as the narrowness of the

margin would admit, and almost directly against each of the erased names, had written Scott and Stafford. By the act of erasing Dorris and Harris, we take it, the voter did not intend to vote for either of them, and the proximity, under the circumstances, indicates that it was his intention to supply their places by the names written. This would not only make it a lawful ballot as to all the offices for which there are names on the ticket, but it would fill the vacancies he created by his erasures, by the names put in their place by his own act.

As to Fenton there is no erasure or other circumstances which indicate that he wished to disturb his ticket as to his name, and we have a right to suppose that he intended to vote for him, unless there is something in his act, or concomitant circumstances, which repel that inference. He put no other name against it, or so near it as to indicate he wished to vote, or did vote, for two persons for that office. To give it that effect, you are compelled to disturb the arrangement as made by his act, render his ballot fraudulent as to the office of county judge, and deprive him of his vote for a representative for whom he has manifested his choice by his own act, and as he had a right to do.

It is our impression that the case is not one to which that section, *supra*, applies, and that the vote was counted correctly by the judges of the election for Fenton, and that the conclusion which the court declared as to the law upon the facts was error. This is our impression, but as suggested it is immaterial, as the error could not affect the result.

The judgment must be affirmed.