Argued November 30, affirmed December 22, 1914, sustained on rehearing April 20, 1915.

## STATE ON INF. LILJEQVIST v. JOHNSON.

### (144 Pac. 1148; 147 Pac. 926.)

**Municipal Corporations—Notices—Posting.**

1. Where notices of election to create a corporation came from the proper source and were displayed in public places for the designated time, it was immaterial who posted them.

**Municipal Corporations—Creation—Elections—Posting of Notices—Place of Posting.**

2. The posting of a notice of election to create a corporation outside of the proposed municipality, but within the precinct, is sufficient.

**Municipal Corporations—Creation—Elections—Hours of Election—Notice.**

3. Failure of a notice of election to create a corporation, to specify that the polls would be open until 8 o'clock, as required by law, did not affect the validity of the election, in the absence of any crowding at the polls or any proof that anyone came too late to vote.

**Municipal Corporations—Organization—Conflict With Existing Corporations.**

4. The existence of the Port of Coquille River with control of the river and bay and harbors between its boundaries and the sea, but excluding from its territory about 25 miles of the river and bay, does not prevent the creation of a port to include all the territory along the river below the Port of Coquille River, for a conflict between the two is not probable or possible.

**Appeal and Error—Finding—Conclusiveness.**

5. A finding sustained by evidence is controlling on appeal.

**Municipal Corporations—Organization—Elections—Time of Election.**

6. The statute providing that the County Court shall call a special election to be held not less than 40 days, nor more than 60 days, on the question of the creation of a municipal corporation, refers to the length of time a call must be made preceding the day fixed for the election.

**Municipal Corporations—Creation.**

7. The improper inclusion of land within a proposed port will not invalidate the proceedings for incorporation, where the quantity is so negligible that its inclusion could have had no appreciable effect on the election, and it does not infringe on the taxable property in any other port.

Municipal Corporations—Creation.

8. The existence of a port, created to prevent improvements on the river below the corporate limits, does not prevent the organization of a port to include lands excluded from such limits.

From Coos: JOHN S. COKE, Judge.

This is a *quo warranto* proceeding by the State of Oregon, upon the information of L. A. Liljeqvist, district attorney for Coos County, Oregon, against E. E. Johnson, J. E. Norton, T. P. Hanly, R. H. Rosa, R. E. L. Bedillion and the Port of Bandon, a pretended municipal corporation. From a judgment for defendants, the informant appeals.

AFFIRMED. SUSTAINED ON REHEARING.

For appellant there was a brief and oral argument by *Mr. Lawrence A. Liljeqvist.*

For respondents there was a brief over the names of *Mr. G. T. Treadgold, Mr. Abner H. Jones, Mr. George P. Topping, Mr. F. J. Feeney, Mr. T. F. Haggarty* and *Mr. William C. Chase,* with an oral argument by *Mr. Treadgold.*

Department 2. MR JUSTICE EAKIN delivered the opinion of the court.

This is an action in *quo warranto* brought by the district attorney of Coos County to test the validity of the election creating the corporation of the Port of Bandon. There are many assignments of error going to the regularity of the election held for its incorporation. Plaintiff contends that the territory sought to be included in the Port of Bandon includes parts, but less than all, of several precincts, and questions the sufficiency of the posting of notices of election, they being posted by private parties; that many of the judges

and clerks of election had removed from the precinct or were otherwise disqualified to serve. There is no provision of law for the election of the successor of such judge or clerk until election day, and the notices of election sent by the county clerk to him could not be posted as directed unless it be done by a volunteer, which in this case for the purpose of posting them a committee of the promoters of the Port of Bandon was appointed to post them in all places where otherwise there would have been none posted; and this is complained of as being illegal and rendering the election void.

1. If the notices emanated from the proper source and have been displayed in public places for the designated time, which seems to have been done in this case, it would appear to be immaterial who posted them. It is so held by Mr. JUSTICE MOORE in *State* v. *Sengstacken,* 61 Or. 455 (122 Pac. 292, Ann. Cas. 1914B, 230).

2. It is also assigned as error that the notices were posted in the precinct, but outside the boundaries of the proposed port, and in some cases the polling place was also outside the port; but the only provision of law for the posting of notices in the precinct considers each precinct the unit and regards it as an integral part of the whole county, and such posting is designed and presumed to inform all the voters of such precinct, even when posted outside the district sought to be incorporated: *Roesch* v. *Henry,* 54 Or. 230 (103 Pac. 439). In case of a general election it is presumed to give notice to every voter, and, until some more direct and definite mode is prescribed for giving it, such notice is the only one that can be given, and was in fact notice to the voters.

3. Also, it is objected that the polls were not kept open from 8 A. M. until 8 P. M. on election day; but for

such neglect, to render the election void, it should appear that voters were by reason thereof deprived of their right to vote. The failure of the notice to specify that the polls would be open until 8 P. M. could mislead no one. The notice specified that it would be open until 7 P. M., and as there seems to have been no crowding at the polls, or proof that anyone was too late to cast a vote, the objection has no merit.

4. The important question raised in this controversy is that the Port of Coquille River heretofore organized, although not containing within its boundaries the whole territory of the Coquille River basin, there being about 25 miles of the river and bay not included in its boundaries, was given control of the river and bay and harbors between the boundaries of the port and the sea, and that such control is exclusive of any other port by virtue of the terms of Section 6121, L. O. L. The Port of Bandon includes all that territory along the Coquille River below the Port of Coquille River; but the control of the river beyond the limits of the port to the sea is principally for the purpose of improving it, and there can be but little conflict in that regard if both proceed to make improvements as each can spend only its own money. The Port of Coquille River includes territory on or adjacent to the river above the center of sections 28, 29 and 30, township 28 south, range 12 west, and the center of sections 25 and 26, township 28 south, range 13 west, between which and the sea there is about 25 miles of the river. The question of the good faith of the promoters of the Port of Coquille River in incorporating only the upper part of the river and leaving out much of the taxable territory, as well as part of the river where improvements might be beneficial, evinces that there must have been some sinister pur-

pose in doing so; and there is testimony tending to show that the purpose was to improve principally, if not only, the upper part of the river and maintain the control of such improvement. Thus the Port of Coquille River should have no objections to another port taking charge of the improvement of the remaining portion of the river and bay. Neither do we think such conflict probable or even possible. That situation exists on the Columbia River where the Port of Portland includes only part of Multnomah County, and in its charter it is given full control of the river between the city and the sea. The Port of Columbia includes Columbia, Clatsop and Multnomah Counties, which give it control also of the Columbia below the Port of Portland. It was first given a charter by the legislature, but that was held unconstitutional as in violation of Section 2 of Article XI of the Constitution, as amended in 1906, forbidding the legislature by special enactment to create a municipality. The court says: "But for this constitutional amendment the enactment could possibly be sustained": *Farrell* v. *Port of Columbia,* 50 Or. 169 (91 Pac. 546, 93 Pac. 254). And it haś been since incorporated by an initiative act, and there seems to be no conflict nor any question raised as to the legality of either.

5. As to the assignments of error 30, 31 and 32, involving the question of the Port of Bandon including territory draining into some other basin, the evidence tends strongly to establish that the Port of Bandon does not include any territory that drains into the Port of Coos Bay or the Port of Coquille River; and in any event the trial court found in favor of defendant upon that question, and that is controlling here.

6. We give but little weight to the contention that the statute provides the County Court shall call a

special election to be held not less than 40 days nor more than 60 days. These words, ''not less than 40 days nor more than 60 days,'' should have preceded the clause ''shall call a special election,'' and all difficulty would have been avoided. One cannot read the statute and not understand that it refers to the length of time a call must be made preceeding the day fixed for the election.

We find no error in the proceedings of the Circuit Court, and the judgment is affirmed.     AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.

MR. JUSTICE McNARY taking no part in the consideration of this case.

---

*Former opinion sustained April 20, 1915.*

ON PETITION FOR REHEARING.

(147 Pac. 926.)

In Banc. MR. JUSTICE McBRIDE delivered the opinion of the court.

7. Upon rehearing it is insisted that a large scope of territory not forming a part of the watershed of the Port of Bandon is included within its boundaries, and that its northern boundary includes lands forming part of the watershed of Coos Bay. The maps presented are confessedly inaccurate, and it appears probable that a small portion of land upon the north is so included; but the quantity is so negligible compared with the whole area of the proposed port that its inclusion could have had no appreciable effect on the

election, and does not infringe upon the taxable property in any other port.    It may well be that if the owners of property so included should refuse to pay taxes to the Port of Bandon, or themselves raise the question as to their improper inclusion within the port, the courts would afford them relief, not by declaring the whole proceedings void, but by declaring such property to be outside the limits beyond which the port could be legitimately extended.

8. A larger area of land whose streams flow into the Coquille River above the Port of Bandon, and empty into that stream within the territorial limits of the Port of Coquille, is also included.    The situation here is peculiar.    Both ports are situated upon the same river, and the watershed of one is in a sense the watershed of the other; that is, the streams flowing through the Port of Coquille empty into the Coquille River, upon the lower waters of which is situated the Port of Bandon.    The Port of Coquille, which seems to have had for one of its purposes rather the prevention of improvements upon the lower river than in good faith improving it, did not include, as it might have done, these lands now included in the Port of Bandon; and as they form part of the watershed of both ports they were properly included in the latter port.    We do not believe that it was ever the intention of the legislature to permit the settlers upon an insignificant portion of a tidal stream to put a belt across it at its headwaters, do little or nothing themselves, and prevent other communities lower down from making extensive and *bona fide* improvements.    If the law should be so interpreted, a dozen men owning a section of land upon a navigable stream could organize a "port" and prevent legitimate improvement of the stream by large communities above or below.

The evidence in this case tends to show that the organizers of the Port of Coquille never intended, and do not now intend, to make substantial improvements on the river below the boundaries of the port; that they object to having the large communities below annexed to them; and we are satisfied they are seeking to use the power of the state to prevent the improvement of the lower river. Since the communities below the Port of Coquille cannot be annexed to that port without its consent, and it is plain that such consent will never be given, their only remedy was to form a port of their own, and this, for the reasons given in our former opinion, we think they had a right to do, and that the Port of Bandon is a legally organized port.                                         AFFIRMED.

FORMER OPINION SUSTAINED ON REHEARING.