Argued May 25; affirmed July 12, 1949

WITHAM *v.* McNUTT, MAYOR ET AL.

208 P. 2d 459

*George W. Mead,* of Portland, argued the cause for appellant. With him on the brief was E. B. Sahlstrom, of Eugene.

*John W. Pennington,* City Attorney for the City of Eugene, argued the cause and filed a brief for respondents.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, BAILEY and HAY, Justices.

BRAND, J.

The plaintiff is a taxpayer and property owner within the territory commonly known as the "South Willamette Street Area". The defendants are the city of Eugene, its mayor and councilmen. The complaint alleges that on 2 November 1948 a purported election was held in Lane County, Oregon, pursuant to Chapter 335, Oregon Laws 1947, at which the proposed annexation of the South Willamette Street Area to the city of Eugene was submitted to the voters. The complaint alleges:

"That the defendants directed one O. V. Gilmore to post notices of such purported election prior to such election at four public places.

"That the said O. V. Gilmore posted notices of such proposed election at four public places only, one of which places was located without the district or area to be annexed, all as is more particularly shown by the affidavit of the said O. V. Gilmore attached thereto, marked Exhibit 'A', and by this reference made a part hereof as if more fully set forth herein; that by reason of the said failure to post notices within the area to be annexed at four public places in said territory or area the jurisdictional requisites of the statutes of the State of Oregon were not met and the said purported election is void.

"That on November 2, 1948, Election Day, the clerks of such election passed out to the voters who presented themselves ballots covering the annexation of the above described district indiscriminately without an attempt on the part of said election board, or clerks thereof, to ascertain or determine

whether or not such voters were residents of the area to be annexed and qualified to vote, and that a substantial number of the voters who presented themselves to the election board and who were furnished ballots covering such annexation of the above described area and who voted therefor actually in truth and in fact were not residents of the area and were not entitled to vote at such election. That the purported vote cast at such election appears to show a majority of votes in favor of such annexation, as well as those votes cast within the said City of Eugene, Oregon, and the defendants will if they are not restrained by order of this court make and transmit to the Secretary of State, a certified description of such annexed territory and an abstract of such vote, pursuant to statute and will cause such territory thereby to be annexed to the said City of Eugene, all to the prejudice of this plaintiff. That said election officials failed to prevent electioneering in favor of the annexation measure at the polls, and one O. V. Gilmore actively electioneered for passage of the measure at Blanton Precinct.''

The plaintiff alleges that if the annexation is held valid he will be subjected to the payment of additional taxes. Plaintiff therefore seeks injunctive relief. By their answer the defendants allege that there were posted four notices of the special election and that three of said notices were posted within the South Willamette Street Area and that one of said notices was posted immediately across the street from the boundary line of the South Willamette Street Area and that all other notices were posted in strict compliance with statute. It is also alleged that notice of said election was duly given by publication in the Eugene Register-Guard pursuant to statute, and that the election was held concurrently with the general federal and state elections and that there was much

publicity concerning said election prior to the date thereof. It is also alleged:

"That the election board in the Blanton Precinct was furnished a map showing the boundary lines of the South Willamette Street area upon which the annexation election was being held. That the election board inquired of each voter his place of residence and then verified the same as being within the district by referring to said map. That the plaintiff and others opposing the annexation of the South Willamette Street area were personally present at the Blanton Precinct poll during said election and raised no objection or challenge to any voters who presented him or herself to vote."

■ Defendants allege that the election board at the precinct in question made diligent inquiry concerning the qualifications and eligibility of each voter who voted upon the proposition. The answer denies that O. V. Gilmore electioneered or solicited votes. By his reply the plaintiff admits that one of the notices was posted immediately across the street from the boundary line of the South Willamette Street Area. Plaintiff denies the other allegations of the answer. The case was tried before The Honorable G. F. Skipworth and The Honorable Dal M. King. Findings of fact and conclusions of law were made and a decree was entered dismissing the plaintiff's complaint and cause of suit. This being a suit for injunction, the law does not, as in the case of proceedings in the nature of quo warranto, impose upon the defendants the duty of affirmatively establishing the legality of the proceedings.

In the analogous case of an election contest under O. C. L. A., § 81-1901 this court has held that the burden of proof is upon the plaintiff. *Hartman v. Young,* 17 Or. 150, 20 P. 17; *Fenton v. Scott,* 17 Or. 189, 20 P. 95; and see *Links v. Anderson,* 86 Or. 508, 168 P. 605, 1182.

From the quoted portion of the complaint it will be seen that the allegations therein are defective. It is alleged that the defendants directed O. V. Gilmore to post notices and that he posted notices at four public places only, one of which was outside the district to be annexed. There was no legal requirement that all of the notices should be posted by O. V. Gilmore, and there is no allegation that other notices were not posted by other persons. The answer affirmatively alleges that there were posted four notices of the election, three of which were posted within the South Willamette Street district and one immediately across the street from the boundary line. In view of the fact that both parties appear desirous that a question of public importance should be decided, we are willing to treat the defective allegation of the complaint as being cured by the allegation of the answer. We will assume that the defendants' allegation that three out of four notices were posted within the district and one was posted immediately outside it, is the equivalent of an admission that not more than three notices were posted by any person within the area to be annexed.

This appeal presents only one serious question which relates to the sufficiency of the notices of election. The statute, pursuant to which the election was called and held, provides in part as follows:

"* * * The council or legislative body shall give notice of such election by publication prior to such election once each week for four successive weeks in a newspaper of general circulation in such corporation, and in such territory or territories proposed to be annexed, also by posting notices thereof in four public places within such corporation, and four public places in each of such territory or territories proposed to be annexed for a like period." Oregon Laws 1947, ch. 335.

For the purposes of this decision we shall assume that there was a failure to post one of the required four notices within the area to be annexed. The question for decision is whether such failure rendered the election void. The findings of fact recite that notice of the special election was duly given by publication in the Eugene Register-Guard, a daily newspaper published in Eugene, in compliance with chapter 335, Oregon Laws 1947. The findings also recite that the official tally sheets introduced as evidence show that 464 votes were cast upon the annexation issue in the Blanton precinct, which was the polling place at which residents of the area to be annexed voted, and that 260 votes were cast for annexation. The plaintiff states the fact to be that 261 voters voted for annexation and 204 against annexation. The evidence shows that in the Blanton precinct there were 1017 registered voters, but the South Willamette Street annexation area constituted only a part of the Blanton precinct. The plaintiff asserts that 75 registered voters who failed to vote were residents of the area to be annexed and eligible to vote upon the measure. The testimony that there were 75 registered voters who failed to vote was given by witness Willian who was a meter reader in a district which included the Willamette Street annexation area. We have serious doubts as to the accuracy of the testimony of the witness upon this issue, which was frankly a mere estimate. For the purposes of this decision, however, we will assume that 75 eligible voters failed to vote upon the annexation issue. It follows that if every one of the 75 voters who did not vote had voted "no" on the annexation issue, it would have lost by 18 votes. The election in fact carried by 57 votes.

There is both confusion and conflict in the decisions in this court concerning the legal effect of failure strictly to comply with the provision of statute concerning the giving of notice of special election. A brief outline of the different rules of law which have been suggested and from which choice must be made is as follows:

Rule 1. Strict compliance with the statute is mandatory and constitutes a condition precedent. Failure of strict compliance voids the election. *Marsden v. Harlocker,* 48 Or. 90, 85 P. 328; *Guernsey v. McHaley,* 52 Or. 555, 98 P. 158; *Wright v. City of McMinnville,* 59 Or. 397, 117 P. 298.

Rule 2. The same as rule 1, subject however to the proviso that the election will be held valid notwithstanding failure of strict compliance, where the result could not by any possibility have been changed if there had been strict compliance. (The phrase "changed result" as herein used refers to adoption or rejection of a measure and does not refer to a mere indeterminative change in the plurality for or against a measure.)

Rule 3. Substantial but not exact compliance with the provisions of the statute relative to notice is sufficient if it is reasonably probable that the irregularities would not have affected the outcome. See language of the court in *Roesch v. Henry,* 54 Or. 230, 244, 103 P. 439.

Rule 4. Rule 3 is suggested in modified form: Substantial but not exact compliance with the provisions of the statute relative to notice is sufficient if in fact upon the evidence the irregularities did not change the result.

Rule 5. Substantial compliance in good faith is

sufficient. See concurring opinion of Mr. Justice McBride in *Roesch v. Henry,* supra.

The plaintiff favors rule 2 and apparently would interpret it thus: Wherever there is a failure of exact compliance, the election would be void unless it conclusively appears that the result would have been the same in the district if every registered voter who did not vote had voted against the measure which was adopted. Thus, if in a county as a whole there were a thousand affirmative, and nine hundred negative votes, but if in one defective precinct there were one hundred and one voters registered but not voting, the election would be void under the above rule because if every one of the one hundred and one voters who did not vote had voted and if they had each voted "no", the election throughout the county would have lost by one vote. *State of Oregon v. Sengstacken,* 61 Or. 455, 122 P. 292; *State ex rel. v. Hall,* 73 Or. 231, 144 P. 475.

If we were to apply rule 1 or rule 2 to the case at bar, it would mean that the election would be void because if all of the qualified voters who did not vote had voted against the measure, it would have been lost. *State of Oregon v. Sengstacken,* supra; *State ex rel. v. Hall,* supra.

We turn to considerations of the authorities. The original rule in Oregon seems to have been that of strict compliance as a condition precedent to the validity of any special election. In *Marsden v. Harlocker,* supra, two suits were submitted together, one for injunction and the other for a writ of review. The plaintiff, a brewery operator, sought to invalidate a local option election. No question was raised concerning the sufficiency of notice of election. It was held that the election was void because no election had ever been ordered by

the county court. So far as the rule concerning notices of election is concerned, the following statement of this court was dictum:

" * * * In the case of special elections, however, all the statutory requirements as to proclamations or other means of giving notice are considered as mandatory and must be observed in order to render the vote of the electors participating therein valid * * * " *Marsden v. Harlocker,* 48 Or. 90, 85 P. 328.

*Guernsey v. McHaley,* supra, involved a local option election and was a suit to enjoin the officers from making the order prohibiting the sale of liquor on the ground that the election was void. The plaintiff was a liquor dealer. The court summarized the statutory requirements as follows:

" * * * At least 20 days before any election, the county clerk is required to deliver to the sheriff of the county at least five notices of the election for each precinct in the county voting on the question, the form of such notice being prescribed by the statute, and it is made the duty of the sheriff, at least 12 days before the election, to post said notices in public places in the vicinity of the polling place or places, and enter of record his compliance with the law in this regard."

The county clerk issued to the sheriff the proper number of notices, but:

" * * * none were posted in one precinct, in another the notices were posted for only 11 days, in another for only 10 days before the election, and in still another but three notices were posted, and these for only eight days. * * * "

The statute made no provision for the publication of notice of election in any newspaper. The court

followed the dictum in the Harlocker case and held that the law must be strictly followed. The court said:

"It is said that no substantial injury resulted in the case under consideration from the failure to post the notices as required by law, but this can never be known. There was, in fact, less votes cast on the question of prohibition than for some of the county officers, and there is no means of determining how many voters did not attend the election who would have done so if they had been advised that such question was to be submitted."

It will be observed that in this case there was not only a failure to post certain notices, but also that the notices which were posted failed to give the required 12 days notice. It follows that the election in this case was prematurely held.

*Wright v. City of McMinnville,* 59 Or. 397, 117 P. 298, was a suit to enjoin the issuance of municipal bonds on the ground that the election to authorize same was invalid. The charter of the city required that 10 days' notice of election be posted in three public places. Only one notice was posted. The city recorder caused notices to be published in a paper and pamphlets to be distributed to the voters. There was no statutory authority for any publication except by the posting of notices. The court said:

"It is perhaps true that a majority of the legal voters of every western city or town can not only read the English language, but they take local newspapers and keep informed as to all neighborhood matters that interest or can affect them. In such an age of enlightenment, it will be conceded that the method pursued by the recorder of publishing notice of the special election furnished much better information respecting the proposed amendment of the charter than the posting of written

notices in three public places could possibly afford. But, however this may be, as the ordinance granting the prayer of the petitioners declared that the special election should be 'in all respects called and conducted in accordance with the provisions of the charter of the city of McMinnville,' the command in this respect was imperative, and necessitated the posting of notices in three public places in the city, in the failing to comply with which the election was void * * * "

It would seem that when the only requirement was for the posting of three notices, the posting of only one would not even constitute a substantial compliance with the charter.

*Roesch v. Henry,* supra, is a case of importance. This was a suit attacking the validity of a local option election. The laws required the posting of at least five notices in each precinct in the county. There was no requirement of newspaper publication. The only failure in posting was in one precinct in which three instead of five notices were posted. The facts were that if the electors who did not vote on the issue had all voted against prohibition, the measure would still have carried. This was a clear case of substantial though not literal compliance. The court, however, was not content to uphold the election merely upon that ground. It inquired into the effect of the irregularity. The court said:

" * * * Hence a failure properly to post the required number of election notices for the prescribed time in a given precinct ought not to affect the vote in the entire county, unless the number of votes in such precinct would *probably affect the general result*. Where it appears, as in Guernsey v. McHaley, 52 Or. 555 (98 Pac. 158), that the irregularities are of such character and magnitude

that they might have affected the outcome, the election ought to be set aside, but if no such result is *reasonably probable,* the election ought not to be disturbed. * * * '' (Italics ours.)

The court quoted with approval the following authorities:

"The vital and essential question in all cases is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election.'' State v. Doherty, 16 Wash. 382, 47 P. 958, 58 Am. St. Rep. 39, 43.

"It is now a canon of election law that an election is not to be set aside for a mere informality or irregularity which cannot be said in any manner *to have affected* the result of the election.'' Dillon, Municipal Corporations, 3d ed. § 197. (Italics ours.)

"The question in such cases is whether the want of the statutory notice *has resulted* in depriving sufficient of the electors * * * to change the result of the election. * * * When the election is legally ordered, and the electors are actually apprised of the time and place appointed * * * the * * * nonfeasance of the officer upon whom the statute devolves the duty of giving the election notices cannot deprive the electors of the right to express their will through their ballots.'' Wheat v. Smith, 50 Ark. 266, 7 S. W. 161. (Italics ours.)

The ambiguous language in the Roesch case which has caused continual uncertainty is as follows:

" * * * We think the rule of law should be that no precinct was affected by the want of sufficient notice but Kamela, and that such defect could not by any possibility have changed the result of the election if the required number of notices had been posted.''

The court had already asserted that notices required in a given precinct were "designed to advise the legal voters of only that precinct." Thus the later remark, "We think the rule of law should be that no precinct was affected * * * but Kamela" was a natural one. The further words, however, "and that such defect could not by any possibility have changed the result * * * " is not a rule of law at all. These words are a definite assertion of fact that in that specific case the defect could not have changed the result.

Clearly, if the defect could not have changed the result, (assuming that every non-voting voter in the precinct had voted adversely) then the election must be valid, but there is not a syllable in the opinion that says that such a strict test must always be applied. On the contrary, the test of reasonable probability is definitely asserted.

It is in this case that the phrase "substantial compliance" is first introduced into our law. Mr. Justice McBride in a concurring opinion, with profound foresight said:

> " * * * I think a fair view, and that most consonant with justice, is that unless there is some probability that a trifling failure apparently negligible has, in fact, changed the result, or there is some reasonable ground for doubt on that question, it ought not to avoid the election even in the precinct where the mistake occurred. I believe the statute so far directory that a substantial compliance is all that is necessary * * * "

In addition to the early cases of *Marsden v. Harlocker, Guernsey v. McHaley* and *Wright v. City of McMinnville,* supra, the strict rule has been stated in later cases, although frequently unnecessary to the decision of the case. A brief analysis of those decisions

follows. *State of Oregon v. Sengstacken,* supra, was a case in the nature of quo warranto to test the validity of proceedings for the organization of the Port of Coos Bay. The defendant therefore had the burden of proof. (*State ex rel. v. Port of Tillamook,* 62 Or. 332, 124 P. 637.) In *State of Oregon v. Sengstacken,* 180 notices of election were required to be posted. There was a neglect to post 44. There was no provision for publication of notice in a newspaper. The strict rule was stated but it appears that there was not even a substantial compliance. The court said:

"The vote upon any measure, determined at a special election, ought not to be distrubed if it can be avoided, and a diligent effort has been made to find, if possible, some way to escape the conclusion which has been forced upon us. In the pioneer days of Oregon it was necessary that notices should have been posted in public places, in order to impart requisite information of pending elections and of other matters in which a party or the public might have been interested. The time has arrived, however, when such notices should be given by being printed in a newspaper, if one be published in the county. By the means suggested, greater publicity would undoubtedly be given, for but few persons ever pause to read posted notices, while nearly every one reads the local papers. The absurdity of requiring 150 election notices to have been put up is apparent, and in case of a general election the failure to comply with the command of the statute would have been immaterial; but as the election herein was special, and a different result might have been possible, there is no getting away from the determination to which we have arrived and still maintain legal principles which have been solemnly adjudicated. If, however, an easier or more efficient method of imparting the required information, respecting special elections, be desired, the authority must be secured from the legislative department."

*State ex rel. v. Port of Tillamook,* supra, was a quo warranto proceeding to test the validity of the port. The court quoted the strict rule. The purpose of the election was to annex new territory. The case was not decided upon the issue of the sufficiency of the notices. Incorporation of the port was held invalid because the legal voters of the area to be annexed were not permitted to vote separately from those within the original port district. In that case the court said:

" * * * It is laid down as a rule, in 15 Cyc. 326, that, where an election has been held and the will of the voters has been executed by the proper authority, it may be presumed that due notice of the election was given. * * * "

In *Palmberg v. City of Astoria,* 63 Or. 222, 127 P. 32, the validity of a bond election was in issue. The printed measure which constituted the required legal notice was different from the petition which instituted the proceedings. One of the proposed commissioners named in the petition was not named in the notice and a different name was improperly inserted therein. This case refers to the substance of the notice and not to the manner of posting, and the election was properly held void. The notice was misleading on an important issue.

In *Cooke v. Portland,* 69 Or. 572, 139 P. 1095, the question related to the annexation of territory to the city of Portland. It was held that the controlling statute, L. O. L., § 3209, requires that election notice be given by publication in a newspaper and by posting of notices. It was also held that election be held both in the city and the territory to be annexed. The court said:

"In brief, as against the plaintiff and others in like situation, the election was void because no

notice of the same was given. On the part of the city it was void because the legal voters thereof had no opportunity to express their wishes on the subject. As to both parties it was void because, worked out to its final analysis, it amounted to an amendment of the charter of the City of Portland by those living entirely without its boundaries.''

In *State ex rel. v. Dalles City*, 72 Or. 337, 143 P. 1127, the issue involved the matter of the premature holding of an election, which will be discussed later. The election was held void. It seems clear that there was no substantial compliance with the requirements of the city ordinance which provided first that the text of the measure shall be printed in such newspaper \* \* \* as shall be designated by the council. The council designated no newspaper whatever. The ordinance also required that the measure be printed not later than twenty days before the election. The election was held on June 16th and the two publications were on May 28th and 29th. Thus the election was held less than twenty days after the publication. The strict jurisdictional rule is laid down at page 349, but it appears that the decision is correct under any of the proposed rules.

In *State ex rel. v. Hall*, 73 Or. 231, 144 P. 475, a quo warranto proceeding, the court merely asserts in general terms that ''the giving of a notice of special election is a condition precedent to the holding of a valid election.'' The court said:

''\* \* \* In such notice the time and place are generally essential, but many of the details as to the conduct of elections are usually regarded as directory: 1 Dillon, Municipal Corp. (3 ed.), Section 197, \* \* \* ''

The notices in all of the districts except one, stated the purpose of the election to be to determine whether the five districts should be united. The notices in one district, however, merely stated the question as follows: "Shall school district No. 9 * * * be united into a union high district?" The court said:

> " * * * While the notice states the purpose of the election in general terms, it is nevertheless sufficient to put every voter in the district on inquiry, and taken in connection with the other record available in the district, referred to above, which was accessible to every voter, we think it was sufficient to inform the voters that there was to be an election, the time and place of the same, and also the purpose thereof. If additional information had been required by the electors, it could have been obtained by inquiry from the clerk, or from the chairman of the board. We therefore think there was *substantial compliance* with the statute as to giving the notice in this district." (Italics ours.)

The court gives an "additional" reason for holding the election valid. The additional reason is that if all of the electors in the two districts where the notices were irregular had voted "no", it would not have changed the result. The court said the case comes within the rule of *Roesch v. Henry*. It was held that there was a substantial compliance with the law.

In *State on Inf. Hedges v. Andresen*, 75 Or. 509, 147 P. 526, the court repeats that "the main jurisdictional requirement * * * which cannot be dispensed with is the notice of the election". The election was held valid.

In *State ex rel. v. Johnson*, 76 Or. 85, 144 P. 1148, 147 P. 926, it was held that "If the notices emanated from the proper source and have been displayed in public places for the designated time * * * it would

appear to be immaterial who posted them." The election was held valid.

In *Staples v. Astoria,* 81 Or. 99, 158 P. 518, the plaintiff, a taxpayer, sought to enjoin a fifty thousand dollar bond issue. The court merely repeats that the notice "required by law to be given constitutes a condition precedent * * * ". It also lays down the rule that where an ordinance requires the publication of a notice of a proposed initiative measure for a certain time, the failure to publish such notice at the required time will vitiate the amendment, but the notices were held sufficient and the election valid. The court quoted with approval the following:

"In 9 R. C. L., page 992, it is stated:

" 'And it is equally clear in the case of special elections wherein the necessity for notice is so much more urgent, that the rule as to compliance with statutory requirements in the giving of notice should be much more strictly enforced. Considerable liberality is, however, allowed even in these elections, and it is a rule of pronounced authority that the particular form and manner pointed out by a statute for giving notice is not essential, provided, however, there has been a substantial compliance with statutory provisions. * * * This liberal rule is based upon the theory that where the people have actually expressed themselves at the polls the courts are strongly inclined to uphold rather than to defeat the popular will. But there must be at least a substantial compliance with the statutory provisions in order that the notice may be held to be constructive.' "

The case of *In re Board of Directors of North Unit Irr. Dist.,* 91 Or. 33, 178, P. 186, was a special statutory proceeding to validate a bond election. The validity of a five million dollar bond issue was involved. The

statute required that three notices of the bond election be posted in each precinct at least fifteen days prior to the election and that publication be had in a newspaper. The notices were posted on October 14th. The election was held on October 29th. It thus appears that none of the notices were ever posted for the required length of time. This is another case of an election being prematurely held and the election was held void. Other defects were also found and the court specifically points out that this proceeding involved the subjecting of the plaintiff's property to the payment of a sum of money and that therefore the statute providing for the service of the process to authorize the action must be complied with.

In the case of *Hill et al. v. Hartzell,* 121 Or. 4, 252 P. 552, the plaintiff brought an original proceeding in mandamus in the Supreme Court. In this case there was no attempt to comply with the statutory mode of giving notice and there was no substantial compliance. The election was properly held void under any of the proposed rules. The court said:

" * * * Courts ought to be, and are, very reluctant to interfere with the will of the people as expressed at an election, but cannot validate an election of this character wherein there has been a total failure to follow the plain and explicit mandate of the statute as specifically pointed out by this court in Briggs v. Stevens, supra."

In the case of *State ex rel. Brown v. Bailey,* 151 Or. 496, 51 P. 2d 671, the proceeding was in the nature of quo warranto. There was a failure to post one of the required notices in one of the precincts. In this case the court said:

"Any failure strictly to comply with the requirements of the statute in respect to giving notice will

not invalidate the election unless a different result could have been possible in the entire district affected by the majority vote.''

The court states that the votes in the one defective precinct could not possibly have changed the result and adds:

'' * * * The mere failure to give sufficient, or any, notice, in some isolated or small precinct would not, standing alone, invalidate the election.
'' * * *

''A notice of election must substantially comply with the required legal notice and must be definite and not misleading: 5 McQuillin, Mun. Corp. (2d Ed.) § 2356.''

Here was a case in which there was clearly substantial compliance with the statute. The election was held valid.

In *State ex rel. Weatherford v. Hayworth et al.,* 152 Or. 416, 53 P. 2d 1048, the validity of a union high school district election was tested by quo warranto. The election was held pursuant to Oregon Code 1930, § 35-3721. The voters had due notice, said the court, and it added:

'' * * * There is no showing that it would have resulted differently had it been held in any other manner. Mere irregularities, not affecting the result, will not be held—especially after a lapse of years—sufficient reason to overthrow an election. * * * '' (Citing Roesch v. Henry, Supra.)

One call in the description of the district was omitted from the notices and petitions. It was held that the error in description did not invalidate the election.

In the case at bar we are dealing with substantial but not exact compliance. The question for decision is whether we are bound to hold an election void because

of the fact that if all of the qualified voters who did not vote had gone to the polls and voted "no" the measure would have been defeated. We reject this test as unrealistic and illogical.

We observe by way of summary that eight cases in which the election was invalidated, purport to approve the rule of strict compliance, either Rule 1 or Rule 2, supra, but that there was not even substantial compliance in any one of those cases. The language of the strict rule, although frequently repeated, was unnecessary to the decisions which would have been the same under the more liberal rule requiring only substantial compliance. The cases to which we refer are: *Marsden v. Harlocker; Guernsey v. McHaley; Wright v. City of McMinnville; State of Oregon v. Sengstacken; Palmberg v. Astoria; State ex rel. v. Dalles City; Hill et al. v. Hartzell; Cooke v. Portland;* all supra. We would also observe that we have discovered only one case in Oregon in which there was apparently substantial compliance with the requirements concerning notice and in which the election was held invalid by this court. We refer to *In re Board of Directors of North Unit Irr. Dist.,* supra, which, as we shall show, is distinguishable from the case at bar.

In the following cases in which the strict rule was stated, there was either strict compliance or the case was decided on issue other than the sufficiency of notice: *State ex rel. v. Port of Tillamook,* 62 Or. 332, 124 P. 637; *State ex rel. v. Port of Bay City,* 64 Or. 139, 129 P. 496; *State on Inf. Hedges v. Andresen,* 75 Or. 509, 157 P. 526; *Staples v. Astoria,* 81 Or. 99, 158 P. 518.

In *Bennett Trust Co. v. Sengstacken,* 58 Or. 333, 113 P. 863, the court discussed *Marsden v. Harlocker*

and *Guernsey v. McHaley,* supra, and then said: "In *Roesch v. Henry* the rigor of the rule laid down in the preceding cases was somewhat modified."

In *Clark v. Hood River County,* 73 Or. 336, 143 P. 897, the question concerned the validity of the notice of election but related only to the contents of the notice and not to the manner of posting or publishing. The court held that the notice complied substantially with the requirement and that no one could have been misled by the language employed. It was held that an entire lack of description of the road to be constructed by the bond issue would render the proceedings void, but mere irregularities are cured by the order of the court declaring the result of the election.

In *State v. Billups,* 63 Or. 277, 127 P. 686, Justice Moore, speaking for the court, returned to the normal rule as stated by him in *Roesch v. Henry,* supra, as follows:

"Each legal voter in a precinct is entitled to have the requisite number of election notices posted therein, at least 12 days prior to the day of election, in order to render a majority vote in favor of prohibition valid, if a failure in this respect would probably affect the result in the entire county." (Citing the Roesch case.)

The Billups case was a criminal prosecution for the violation of a local option law. The defendant attempted by a collateral attack to show that the law was not adopted at a legal election because the notices were posted several days before the order calling the election. The court holds that on collateral attack the law should be liberal in upholding the election but it adds:

"In Roesch v. Henry, 54 Or. 230, 246 (103 Pac. 439, 445), however, which was a direct proceeding,

Mr. Justice McBride, referring to the provisions of the local option law, very justly says: 'I believe the statute so far directory that a substantial compliance is all that is necessary, and that jurisdiction comes in the first instance from the petition and order of the court submitting the question of prohibition to a vote, and not from the notice, which is a mere incident.' "

Thus the concurring opinion of Justice McBride in the Roesch case becomes the opinion of the court in the Billups case. It would appear that substantial compliance is the rule.

In *Wieley v. Reasoner,* 69 Or. 103, 138 P. 250, suit was brought to invalidate a local option election held in Hillsboro. The first notices of election provided for only one voting place. Thereafter notices were posted in two precincts providing for two polling places. The last notices were posted only five days before election whereas the statute requires twelve days. The statute required a specification of the precincts and boundaries thereof. The court said:

"* * * In any event, it was not possible that the voters did not have notice of the election by virtue of the first notices, as they were the usual notices for the city, and the second notices made no change therein, except to provide an additional voting place; and the election should not be set aside because of the omission of the County Court without proof that some qualified electors were deprived of the right to vote by reason thereof. The notices were a substantial compliance with the requirements of the statute. * * *"

In *Smith et al. v. Hurlburt et al.,* 108 Or. 690, 217 P. 1093, there was a suit to enjoin the collection of tax on the ground that the levying district was not prop-

erly incorporated because the notice of election was indefinite. The court said:

"It is admitted that there were less than 275 legal voters in Maplewood Water District. The vote stood 201 for organization of the district and 4 against. There was no possibility of a change in the result. In State v. Johnson, 76 Or. 85 (144 Pac. 1148, 147 Pac. 926), it was held that an election should not be disturbed on account of a defect in the notices, *without a showing* that the result might have been changed. To the same effect are the opinions: Wiley v. Reasoner, 69 Or. 103 (138 Pac. 250); State v. Hall, 73 Or. 231 (144 Pac. 475); Links v. Anderson, 86 Or. 508 (168 Pac. 605, 1182); and Roesch v. Henry, 54 Or. 230 (103 Pac. 439)." (Italics ours.)

It was held that the district was validly organized.

In *Links v. Anderson,* 86 Or. 508, 168 P. 605, 1182, the plaintiff brought a proceeding to contest an election which was held for the purpose of organizing an irrigation district. The court said:

"\* \* \* The plaintiffs have taken upon themselves the burden of contesting the election. It is incumbent upon them, therefore, to show not only that illegal votes were cast but also wherein they would have affected the result adversely to the plaintiffs. They state in effect that many persons were allowed to vote at the election without being legal voters, but they give no intimation about the nature of their disqualification. Neither is it stated whether these illegal votes were cast for or against the scheme of organization. For aught that appears every illegal vote was cast against the organization. Under such circumstances the plaintiffs cannot complain for it is manifest that the result would not be affected. \* \* \*"

There was also a difference in description of the proposed district, between the language in the order

for election and in the notice of election. It was held that there was no material error in the proceedings.

In *Nicholas v. Yamhill County,* 102 Or. 615, 192 P. 410, 203 P. 593, suit was brought attacking the validity of an election to authorize a special tax. The court said:

"It is a condition precedent to the validity of an election granting authority to issue bonds to provide funds for a public purpose and to levy taxes to pay the interest thereon and create a sinking fund to pay the principal, that the notices of the election required by statute be given for the time and *substantially* in the manner designated therein:" (Italics ours.)

In *Coos County v. Oddy,* 156 Or. 546, 68 P. 2d 1064, the county brought a mandamus proceeding to require the defendant, as county clerk, to advertise the sale of bonds which were authorized at a special election. The case was tried in the circuit court before the writer of this opinion and a peremptory writ of mandamus was issued. The defendant appealed. A special election was held in conjunction with a special state election, and at said election 5,453 registered voters voted. 5,067 votes were cast on the proposed bond issue, 2,638 being in favor of said measure and 2,420 being against it. There was a majority of 209 in favor of the measure. This court said:

"There are 56 voting precincts in Coos county. If the provisions of the statute had been strictly followed, there would have been posted 820 notices of said election. The notices prescribed by statute were all duly posted in each of said voting precincts, except that in precincts numbered 10, 25, 41, 45 and 60, while there should have been 20 notices posted, in fact there were only 18 posted in each of said precincts; and in precinct numbered 57, there should

have been 10 while in fact only eight notices were posted in said precinct. In precinct 18, four of the required 20 notices were not posted until January 14, 1936. The statute requires the county clerk 'at least 10 days before any special election' to mail two election notices 'to each judge and each clerk of election in each precinct,' and prescribes that it shall be the duty of the several judges and clerks to immediately post said notices in public places in the respective precincts: Section 36-204, supra. The election being held upon the 31st of January and the four notices last mentioned having been posted on the 14th of the same month, there was no irregularity with respect thereto.

"The learned trial judge held that with respect to the six precincts in each of which there were two less than the required number of notices posted, there was a substantial compliance with the law, and that there is nothing in the record to show that, if in each of those six precincts these two notices had been posted; the result would have been different; hence, the election was not illegal or ineffective, but valid and binding. Without reviewing the authorities upon this phase of the case, we concur with the trial court in respect thereto."

The court stated, however, that it preferred to base the decision upon a statute, the effect of which was to ratify any irregularity.

We have referred to the fact that there was one case, *In re Board of Directors of North Unit Irr. Dist.,* 91 Or. 33, 178 P. 186, in which an election was held void, although there was apparently a substantial compliance with the statute. That case stands alone. The statute required both publication in a newspaper and posting of notices. The publication in the newspaper was duly made, yet the election was held void because notices were not posted for the required period of time. This is one of several cases including *Guernsey*

*v. McHaley* and *State ex rel. v. Dalles City,* supra, which involved the premature holding of an election. In each of the three cases the election was held before the expiration of the required time, measuring from the date of the first posting. It may be that sound public policy requires that the full statutory period of time for popular discussion and deliberation on a measure should always intervene between the time of first publication and the election. The giving of notice for the full period required by statute appears to be of the essence. In the Board of Directors case, supra, the failure appears to be trivial, since the newspaper publication was made strictly in accordance with the statute, and it was only by reason of the time of posting that the election was held to be premature. It is clear that it was this prematurity which was considered to be the fatal defect, for the court said: "An election to authorize the issuance of bonds held before the expiration of the time of notice is nugatory:" Since the Board of Directors case is clearly distinguishable, we need not consider whether upon the same facts we would now hold such an election void.

From the foregoing review of the authorities, we conclude that this court is not so bound by the early decisions as to prevent a fresh consideration of the question in the light of changed conditions and of the rule of reason. We will first consider the validity of the contention that since there was a failure of strict and literal compliance, the election must be held void unless it conclusively appears that the result would have been the same if every qualified voter who did not vote had voted and had voted "no". In the first place the suggested rule ignores the fact that the burden of proof of illegality is upon the plaintiff. Accepting the estimate or guess of the witness Willian

that 75 qualified voters failed to vote on the annexation issue, it would appear that there were 540 qualified voters in the area to be annexed. About 86 per cent of the qualified voters participated in the election while about 14 per cent failed to vote. The proposed rule is based upon the false premise that if notice had been properly given, all of the voters would have voted. The percentage of vote in the area to be annexed was extraordinarily large, for the election was held in conjunction with the general election for the choice of a President of The United States. Are we to assume that if the one defective notice had been posted on the other side of the street, 75 voters who stayed at home would have voted? Again, if all of the qualified voters in the area, except 20, i. e., a total of 520 out of 540, had voted, and if 55 out of 75 non-voters had voted "no", the election would still have carried by a vote of 261 to 259. Even upon this absurd assumption the result would not have been changed. If any logical inference can be drawn at all as to how the non-voting voters would have voted, it is that they would probably have voted in the same proportion "for" and "against" as in the case of those who did vote. On that basis, the result would be a total of 303 affirmative votes to 237 negative. Illustrations given demonstrate that the proposed rule is based upon a factual absurdity. We think the evidence established by a strong preponderance that the ultimate result would not have been changed if the notice had been properly posted on the other side of the street. We think this is true, even if all qualified voters had voted and we think there is no reason to believe that all, or any large part of the non-voters would have voted if the notice had been properly posted.

There is a more fundamental reason in this case for

rejecting the rule of strict compliance as a condition precedent. The cases in which that rule originated, and in fact at least 18 of the cases cited supra, arose under laws which provided for no notice except by posting. If one-fourth of the required notices were not posted, as in *State of Oregon v. Sengstacken,* supra, one-fourth of the official means of notifying the voters was omitted, but the statute in the case at bar, in effect, required the distribution of hundreds of notices by means of publication in the daily press and by the less effective means of posting four notices. The notices were duly published in the Eugene Register-Guard. It follows that if there was a total failure to post one of the required four notices, such failure did not constitute a failure of one-fourth, but only a failure to give a small fractional part of all of the required notices. We repeat what was said in *State of Oregon v. Sengstacken* to the effect that the vote upon any measure determined at a special election ought not to be disturbed if it can be avoided, and:

> "* * * The time has arrived, however, when such notices should be given by being printed in a newspaper, if one be published in the county. By the means suggested, greater publicity would undoubtedly be given, for but few persons ever pause to read posted notices, while nearly every one reads the local papers. * * *"

As a matter of fact, the fourth notice which was posted on the wrong side of the street was in a place where it was as likely to be seen by the voters of the area as it would have been if posted a few feet across the boundary line within the area. It also appears that the Blanton voting precinct included other territory in addition to the area to be annexed. For all we know, the defective notice may have been posted within the

voting precinct though outside of the area to be annexed. In that event, the holding in *State ex rel. v. Johnson*, 76 Or. 85, 144 P. 1148, 147 P. 926, would become revelant. In that case the court said:

> "It is also assigned as error that the notices were posted in the precinct, but outside the boundaries of the proposed port, and in some cases the polling place was also outside the port; but the only provision of law for the posting of notices in the precinct considers each precinct the unit and regards it as an integral part of the whole county, and such posting is designed and presumed to inform all the voters of such precinct, even when posted outside the district sought to be incorporated * * * *"

■ We conclude that there was substantial compliance with the statute and there is no evidence that the ultimate result would have been affected had compliance been strict. On the other hand, we think that the preponderance of evidence establishes that the result would not have been changed had there been strict compliance. We reject proposed rules 1 and 2 and hold that under rule 3, 4 or 5 there was no fatal defect in the posting and publishing of notices of election. Speaking of special elections it is said:

> "* * * Considerable liberality is, however, allowed even in these elections and it is a rule of pronounced authority that the particular form and manner pointed out by a statute for giving notice is not essential, provided, however, there has been a substantial compliance with statutory provisions. Following this rule, it has been held that where the great body of the electors has actual notice of the time and place of holding the election and of the questions submitted, the requirement as to notice is satisfied. Thus, the formalities of giving notice, although prescribed by statute, are frequently con-

sidered directory merely in the absence of an express declaration that the election shall be void unless the formalities are observed. This liberal rule is based upon the theory that where the people have actually expressed themselves at the polls, the courts are strongly inclined to uphold, rather than to defeat, the popular will. * * *'' 18 Am. Jur., Elections, § 110, p. 248.

■ The evidence supports the finding of the trial court to the effect:

"That the election board in the Blanton Precinct, which was the polling place at which residents of the area to be annexed voted, was furnished a map clearly showing the boundary lines of the South Willamette Street Area upon which the annexation election was being held. Instructions and all other election board supplies were also furnished. The election board inquired of each voter his place of residence and then verified the same as being within the district by referring to said map before permitting the elector to vote.''

■ The charge that "Ballots were furnished electors indiscriminately irrespective of their qualifications to vote" is not supported by the evidence. There is no evidence that electioneering was *permitted* at the polls. At worst, there was an impropriety by one voter in soliciting one vote from a friend. There is evidence there were minor variations in the two poll books but there is no evidence as to which is correct. There is some evidence that eight persons voted who were not qualified to vote. There is no evidence as to whether they voted "yes" or "no". All of these alleged irregularities are disposed of in the portion of the opinion in *Links v. Anderson* which is quoted supra.

The decree of the circuit court is affirmed. Neither party will recover costs.